Zein E. Obagi, Jr. (State Bar No. 264139)
zobagi@obagilaw.com
THE OBAGI LAW GROUP
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
Tel: (424) 245-4217 Fax: (310) 734-1814

Hee J. Kim (State Bar No. 275010)
hee@milwaki.com
MILLER WASHINGTON & KIM, LLP
725 Washington Street, Suite 300
Oakland, California 94607
Tel: (510) 891-0616 Fax: (510) 839-9857

Attorneys for Plaintiffs,
STUDENT M.M., by and through his guardian ad litem, Seanna Lackey, and SEANNA LACKEY

FILED
CLERK, U.S. DISTRICT COURT
APR 10 2013
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION BY DEPUTY

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

STUDENT M.M., by and through his guardian ad litem, Seanna Lackey; and SEANNA LACKEY,

Plaintiffs,

v.

VICTOR VALLEY UNION HIGH SCHOOL DISTRICT; GAYLE HINAZUMI; JEANETTE ANDERSON; GREG JOHNSON; PATRICIA JOHNSON; CHRIS DOUGLAS; JEFF ROBINSON; DAVID ENRIQUEZ; ELVIN MOMON; KENDALL DAWSON; and DOES 1-100, Inclusive,

Defendants.

Case No.: ED CV 13 - 00653 JGB (SPx)

[SAN BERNARDINO COUNTY SUPERIOR COURT CASE NO. CIV VS1202510]

**NOTICE OF REMOVAL AND DECLARATION OF ZEIN OBAGI IN SUPPORT THEREOF**

**[28 U.S.C. § 1441(c)]**

[Filed concurrently with Civil Cover Sheet; Notice to Adverse Parties of Removal; Notice of Interested Parties; Notice of Related Case]

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT:**

**PLEASE TAKE NOTICE** that Plaintiff Student M.M., by and through his guardian ad litem Seanna Lackey, and Plaintiff Seanna Lackey hereby remove to the United States District Court the state court action described below based on the first appearance of claims arising under Federal law within the last thirty days, specifically for violation of the Rehabilitation Act, 29 U.S.C. § 794, and for violation of Federal civil rights, 42 U.S.C. § 1983. See also 28 U.S.C. §§ 1331, 1441(c).

## I. REMOVAL IS TIMELY

1. On May 29, 2012, Plaintiffs Seanna Lackey and Student M.M., a minor, commenced this civil action *in pro per* against the Victor Valley Union High School and Defendant Patricia Johnson for breach of contract, fraud, malicious prosecution, amongst other claims. Plaintiff Lackey is a lay person with no legal expertise acting in her individual capacity and as the guardian *ad litem* for Student M.M. The case was entitled, *Seanna Lackey, et al. v. Victor Valley Union High School District*, San Bernardino County Superior Court Case No. CIV VS1202510. A true copy of Plaintiffs' initial complaint is attached as **EXHIBIT 1** and incorporated by reference as though it is fully set forth here.

2. On December 11, 2012, Attorneys for Plaintiffs substituted into the case, and Plaintiffs became represented by counsel for the first time in this action. A true copy of the Substitutions of Counsel for Plantiffs Seanna Lackey and Student M.M. are attached as **EXHIBIT 2** and incorporated by reference as though they are fully set forth here.

3. On March 11, 2013, following a demurrer by District to the Complaint, Plaintiffs filed their First Amended Complaint (FAC), which they were entitled to file as of right. In the FAC, Plaintiffs named additional defendants: Gayle Hinazumi, Jeannette Anderson, Greg Johnson, Chris Douglas, Jeff Robinson, David Enriquez, Elvin Momon, and Kendall Dawson.

4. The FAC alleges, for the first time, claims or causes of action invoking Federal question jurisdiction under 28 U.S.C. § 1331, specifically for violation of the Rehabilitation Act, 29 U.S.C. § 794, and for violation of Federal Civil Rights, 42 U.S.C. § 1983. A true copy of the FAC is attached as **EXHIBIT 3** and incorporated by reference as though it is fully set forth here.

5. Pursuant to 28 U.S.C. § 1446(b), a Notice of Removal must be filed within 30 days of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. Although not previously removable, an action is now removable and a notice of removal may be filed within 30 days of a subsequent pleading, amended pleading, motion, order, discovery response, or other paper making it plain the existence of Federal question jurisdiction. See 28 U.S.C. § 1446(b)(3).

6. Plaintiffs initial complaint filed, *in pro per*, and without the assistance of counsel, did not contain any Federal questions. As lay, *in pro per* litigants, Plaintiff were not aware, nor could they be reasonably expected to be aware, of both Federal claims or causes of action available to them, or the availability of a Federal forum to pursue their action.

7. The FAC of March 11, 2013, alleged causes of actions arising under existing and current Federal law, and was the first opportunity for Plaintiffs to allege claims containing Federal questions with the assistance of counsel.

8. Moreover, Plaintiffs need the protection of this Federal court, and have the right to this forum based on their timely filing of the instant notice of removal. This notice was filed within 30 days of the first appearance of a Federal question in the pleadings.

## II. FEDERAL QUESTION JURISDICTION EXISTS

9. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court by Plaintiffs pursuant to the provisions of 28 U.S.C. § 1441(a).

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

10. Under § 1331, Title 28 of the United States Code, "The district courts [] have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

11. The well-pleaded FAC here presents claims for violation of the Rehabilitation Act, 29 U.S.C. § 794, and violation of Federal Civil Rights, 42 U.S.C. § 1983.

12. This action properly invokes Federal question jurisdiction because multiple claims or causes of actions here arise and are alleged under existing and current Federal law.

13. Whenever a separate and independent claim or cause of action, which would be removable if sued on alone, is joined with one or more otherwise nonremovable claims or causes of action, then the entire case is removable. *American Fire & Casualty Company v. Finn*, 341 U.S. 6, 11 (1951). Because Plaintiffs allege independent claims or causes of actions invoking Federal question jurisdiction, this entire action is removable.

## III. PROCEDURE

14. Plaintiff files this Notice of Removal both in this Court and in the Superior Court of the State of California, in and for the County of San Bernardino.

15. Plaintiffs respectfully submit that the above facts provide adequate and good cause for the removal of the present civil action to the District Court under 28 U.S.C. § 1441(c).

16. Pursuant to 28 U.S.C. § 1446(d), a Notice to Adverse Parties of Removal will be promptly served upon Defendants in this action, and filed in the Superior Court of the State of California, in and for the County of San Bernardino. A true copy of Plaintiffs' Notice to Adverse Parties of Removal is attached as **EXHIBIT 4** and incorporated by reference as though they are fully set forth here.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

17. A copy of other pleadings and papers served on Defendant District is attached to this Notice of Removal as **EXHIBIT 5** and incorporated by reference as though they are fully set forth here.

## IV. CONCLUSION

WHEREFORE, the above-entitled action, now pending in the Superior Court of the State of California, in and for the County of San Bernardino, is removed to the United States District Court for the Central District of California, Eastern Division.

Dated: April 9, 2013

**THE OBAGI LAW GROUP**
**MILLER WASHINGTON & KIM, LLP**

By:____________________
Zein E. Obagi, Jr.
Attorneys for Plaintiffs,
STUDENT M.M. and
SEANNA LACKEY

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

**DECLARATION OF ZEIN OBAGI**

I, Zein E. Obagi, Jr., hereby declare as follows:

1. I am an attorney at law licensed to practice before all the courts of the State of California, and before the U.S. District Court for the Central District of California. I am the principal attorney of the law firm, The Obagi Law Group, attorneys of record for Plaintiffs Student M.M. and Seanna Lackey. I have personal knowledge of the facts set forth herein, and would and could competently testify thereto if called upon to do so, except for those facts stated on information and belief, and as to those facts I believe them to be true.

2. I make this declaration in support of Plaintiffs' Notice of Removal to the United State District Court for the Central District of California.

3. On information and belief, Attached as **EXHIBIT 1** is a true and correct copy of Plaintiffs' initial civil complaint, filed on or about May 29, 2012, in the Superior Court of the State of California, in and for the County of San Bernardino.

4. Attached as **EXHIBIT 2** is a true and correct copy of Plaintiffs' Substitution of Counsel, filed on or about December 11, 2012 in the Superior Court.

5. After the Substitution of Counsel was filed in December, on information and belief, was the first time Plaintiff Seanna Lackey was represented by counsel in this action.

6. Attached as **EXHIBIT 3** is a true and correct copy of Plaintiffs' First Amended Complaint (FAC), filed on March 11, 2013, in this civil action.

7. On information and belief, on March 11, 2013 is the first instance when claims or causes of action invoking federal question jurisdiction under 28 U.S.C. § 1331 were presented or alleged in this action.

8. On information and belief, prior to the filing of Plaintiffs' FAC on, this action was not removable to federal court.

9.      After diligent investigation and reasonable search, the filing of the FAC on March 11, 2013 was the first opportunity for Plaintiffs to utilize the assistance of counsel to realize and allege claims containing federal questions.

10.     Attached as **EXHIBIT 4** is a true and correct copy of the Notice to the Court and Adverse Parties of Removal promptly served upon Defendants in this action, and filed in the Superior Court of the State of California, in and for the County of San Bernardino.

11.     Attached as **EXHIBIT 5** are at least some of the pleadings and other papers served on the parties in this action.

12.     On information and belief, Plaintiffs cannot obtain a fair trial in the Superior Court.

13.     Plaintiffs have sought removal within 30 days of the first appearance of a federal question in their pleadings.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on April 10, 2013 in Los Angeles, California.

ZEIN E. OBAGI, JR.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

**EXHIBIT 1**

Seanna Lackey (Pro Per )

9920 SVL BOX

Victorville , Ca 92395

2139259779

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
VICTORVILLE DISTRICT

MAY 29 2012

BY ANITA MORALES DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO, VICTORVILLE DISTRICT

VICTORVILLE COURTHOUSE

Seanna Lackey, Master Muhammad ) Case No: CIVVS 1202510

Plaintiff, )

vs. )

Victor Valley Union High School District, )

Victor Valley Union High School District )

Student Attendance Review Board, Patricia )

Johnson Does 1 through 100. )

Defendant )

Breach Of Contract, Fraud, Education Code, Malicious Prosecution , Perjury, False Advertisement, Demand For Jury trial.

Dated this 5/25/2012

GENERAL ALLEGATION

(By all Plaintiffs against all Defendants)

1. Plaintiff Seanna Lackey, and Master Muhammad was at relevant times mentioned a resident of the County of San Bernardino , State of California and now is a resident of San Bernardino County.

2. Plaintiff Seanna Lackey, and Master Muhammad was and is a resident of the County of San Bernardino State of California. Plaintiff Seanna Lackey, was and is a Parent Of 14 Year old Student Master Muhammad was and is a resident of the County of San Bernardino State of California.

3. Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board was and is a corporation organized and existing under the laws of the State of California, conducting business in Victorville , California, with its principal office in San Bernardino County, California. The Victor valley Union high school District is an The Victor Valley Union High School District Student Attendance Review Board for outstanding efforts in stopping school truancy. The board consists of members from several interdepartmental agencies focused on helping students stay in school.

FIRST CAUSE OF ACTION

(Breach of Written Contract)

(By against all Defendants)

10. Plaintiff Seanna Lackey, and Master Muhammad incorporates by reference paragraphs 1 through 16, inclusive, of this Complaint (including all paragraphs of the General Allegations and all paragraphs of all preceding causes of action, if any) as if the same were fully set forth herein.

11. On or about 10/27/2011, Plaintiff Seanna Lackey, and Master Muhammad and Defendants Attended a SARB Hearing to review students attendance, grades, and discipline . At the SARB Hearing the Plaintiffs and Defendants entered into a Student Attendance Review Board Agreement .Victor Valley Union High School District is a California corporation, and provides educational services to students (which operates in San Bernardino County VVUHSD Controls and Operates the Victor Valley Union High School District Student Attendance review Board, which The board consists of members from several interdepartmental agencies focused on helping students stay in school. The Defendant failed to help Plaintiff Master Muhammad stay in school.

12. At or about the time the SARB Agreement was executed, Parent explained to the SARB Board that student was a 13 year old special education student, with Autism, Speech and Language impairment, fine motor impairments, and that there was a due process pending because the district was failing to provide student with his accommodations, and a Free Appropriate Public Education so he could attend Victor High School . Parent informed the SARB that student couldn't attend Victor Valley High School, without his NPA 1:1 Aide Autism therapist because of an Personal injury student sustained on 4/6/2011,that was caused

4.   Plaintiffs are informed and believe and based on such information and belief allege that Defendant Victor valley union high School district ,and Victor valley Union High School SARB was and is a resident of the County of San Bernardino  State of California.

5.   The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 100, inclusive, are unknown to Plaintiffs at the present time.

6.Plaintiffs therefore sue said Defendants by such fictitious names and will seek leave of Court to amend this Complaint to set forth their true names and capacities thereof, when the same has been ascertained.

7.   Defendants, and each of them, were and are the agents, servants, representatives, and/or employees of each of the other Defendants herein, and were at all times acting within the course and scope of such agency, representation and employment and with the permission and consent of each of said Defendants.

8.   Plaintiffs are informed and believe, and upon such information and belief allege, that each of the Defendants, including Does 1 through 100, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

9.   Wherever appearing in this complaint, each and every reference to Defendants and to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them, named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

by VVUHSD inexperienced, and untrained Staff. I also explained to the Defendants that student was a danger to himself and others, and that mother feared for his safety.

13. At the SARB Hearing parent Also informed the SARB that student couldn't attend school without his Daily NPA 1:1 Aide. The SARB Chair woman, and Director Of student support services Patria Johnson made an announcement on speaker microphone ,"that the SARB would provide student the aide listed in his IEP", and on 10/27/2011 a SARB contract was executed promising to provide student the Aide outlined in his IEP.

SARB

14. However 3 hours after executing the contract Patricia a Johnson Called parent and said the District is refusing to provide student with the aide that is outlined in his IEP.A few days later parent deceived a letter from the VVUHSD Counsel verifying that the district was not going to provide the aide outlined in students IEP, despite the agreement that was signed between S Agreement and Parent, and student dated 10/27/2011.

15. The District made it very difficult for parent and student to perform under the contract because they refuse to provide student his NPA 1:1 Aide as required by his IEP dated 4/18/2011,6/2/2011and SARB Contract dated 10/27/2011,and student was unable to attend school without his NPA 1:1 Aide Autism Therapist .

16.On 2/19/2012 Parent filed a claim with the VVUSHB and the District has failed to respond to our claim .

SECOND CAUSE OF ACTION

( Fraud)

Plaintiff Seanna lackey, and Master Muhammad incorporates by reference paragraphs 17 through 23 , inclusive, of this Complaint (including all paragraphs of the General Allegations and all paragraphs of all preceding causes of action, if any) as if the same were fully set forth herein.

17. At the SARB hearing The SARB Board Members said that "We Want Our students to be successful, and graduate high school. Good Attendance is the key to good grades, academic success, and graduation. After signing the SARB Agreement On 10/27/2011 Parent received a call from Patricia Jonson Informing parent that the district ,and Victor Valley Union High School District Student R Attendance review board was not going to provide the NPA 1:1 Aide listed in students current IEP despite the SARB Agreement dated 10/27/2011,and despite students need for a NPA 1:1 Aide .There is also a Police Report Against Patricia Johnson for Failing to provide student his Aide listed on the SARB Agreement, and IEP.

18.  Parent believes that The SARB Board and Victor valley union High School District acted in Bad faith, when they signed the SARB Agreement on 10/27/2011 because they made a An intentionally or recklessly false statement of fact, and that they had intention to defraud when they signed the SARB Agreement. Also the fact that they reneged on the contract with Malice against the student, and his Parent .

19. At The SARB Hearing on 10/27/2011 the SARB Board and victor Valley Union High school Misrepresented that they were wanted student back and school and would provide student with the aide listed in his IEP. But there action proved otherwise.

20. 10/28/2011 Parent took student to Victor Valley High School, and the Personnel informed Parent that they were not providing student with the Aide in his IEP Individual Education Plan despite the Contract that Victor Valley Union High School District Student R Attendance reviewed board (SARB), Parent and student signed on 10/27/2011.

21. Plaintiff believes that the element of Fraud include False Promise. A claim of fraud may arise if a defendant entered into a contract and made promises that it never intended to perform. 22.Plaintiff believes that the defendants entered into a contract, and made a promise that it never intended to perform.

23.The elements of a false promise claim, which are included in this Lawsuit are:

a. The defendant made a promise. The promise was important to the transaction.

c. At the time he or she made the promise, the defendant did not intend to perform it.

d. The defendant intended the victim to rely upon the promise's. The victim reasonably relied upon the promise's. The defendant did not perform the promise's. The victim was harmed as a result of defendant not carrying out his or her promise. The victim's reliance on the defendant's promise was a substantial factor in causing the victim's harm.

Third CAUSE OF ACTION

( Education Code 56070 )

Plaintiff _ Seanna lackey, and Master Muhammad incorporates by reference paragraphs 24 through 27, inclusive, of this Complaint (including all paragraphs of the General Allegations and all paragraphs of all preceding causes of action, if any) as if the same were fully set forth herein.

24.The VVUHSD And the VVUHSD SARB Board Violated Education Code because they failed to provide student a highly qualified aide. The Aide that they appointed was not qualified to work with Master Muhammad, and furthermore the aide that the district appointed was not an NPA 1:1 Autism specialist Therapist, as previously agreed.

25.Student was unable to attain his education at VVUSH because the district failed to provide him with his NPA 1:1 aide that as provided to him at students 4/18/2011 IEP,and or June 2,2011 IEP . Furthermore Students behavior impedes his learning.

26.Ronya Wood from leafwing center recommended in her FAA reports that the student receive a NPA 1:1 Aide from leafwing center, and she also said that the districts aide were not qualified to work with student.

27.VVUHSD and SARB contributed to the delinquency of a minor by failing to provide ,or attempting to provide student his daily NPA 1:1 aide after signing the SARB Agreement dated 10/27/2011, so that he could attend Victor Valley High School for the 9th grade.

## Fourth CAUSE OF ACTION

(Specific Performance)

(By Seanna Lackey, and Master Muhammad alone against all Defendants)

Plaintiff _ Seanna Lackey, and Master Muhammad re-alleges and reincorporates each and every allegation contained in the General Allegations and all previous paragraphs of all previous Causes of Action this Complaint, inclusive, as though fully set forth herein. Plaintiff seeks to add Paragraph 28 thru 29 inclusively.

28. The consideration set forth in the SARB Agreement was fully and fairly agreed to and reflected upon students Individual educational plan and reasonable value of the lack of performance by Defendants agreement to provide student with his Aide listed in his IEP and they failed to provided student his aide listed in his IEP As agreed at the SARB hearing, and in the SARB Contract dated 10/27/2011, THE NPA 1:1 Aide that was previously being provided by the District and pursuant to students IEP was an NPA 1:1Aide which billed at $484 a day, which also included ABA Autism Behavioral Analysis Therapy .

29. Plaintiff Seanna Lackey has fully performed all conditions, covenants, and promises to be performed on the part of Plaintiff's agreement under the SARB Agreement. The Defendants failed to provide student an education pursuant to the SARB Agreement, and obstructed his access to his Home High School of Victor valley High School, Classroom, teachers, Peers, and academic instruction, and his ABA Therapy and NPA Aide. He was Barred from Victor valley High School campus 10/27/2011 until March 26,2012.

## Fifth CAUSE OF ACTION

(Malicious Prosecution)

Plaintiff Seanna lackey, and Master Muhammad incorporates by reference paragraphs 30 through 38, inclusive, of this Complaint (including all paragraphs of the General Allegations and all paragraphs of all preceding causes of action, if any) as if the same were fully set forth herein.

30.*Seanna Lackey*, claims that Victor Valley Union High School District, Victor Valley Union High School District Student Attendance Review Board, Patricia Johnson Does 1 through 100. wrongfully brought a lawsuit against Seanna Lackey for San Bernardino Superior Court Case number 3281239SL. To establish this claim, *Seanna Lackey* must prove all of the following:

31. That Victor Valley Union High School District, Victor Valley Union High School District Student Attendance Review Board, Patricia Johnson Does 1 through 100 was actively involved in bringing or continuing the lawsuit for San Bernardino Superior Court Case number 3281239SL,

32. That the lawsuit ended in Victor Valley Union High School District, Victor Valley Union High School District Student Attendance Review Board, Patricia Johnson Does 1 through 100.'s favor;

33. That no reasonable person in Victor Valley Union High School District, Victor Valley Union High School District Student Attendance Review Board, Patricia Johnson Does 1 through 100.*nt*'s circumstances would have believed *that at the hearing Patricia Johnson failed to provide evidence that the defendants Complied with the SARB Agreement Dated 10/27/2011.Patricia Johnson failed to provided evidence that the defendants provide student his NPA1:1 Aide, or Evidence that the defendants attempted to provide student his NPA Aide*;

34. That Victor Valley Union High School District, Victor Valley Union High School District Student Attendance Review Board, Patricia Johnson Does 1 through 100 acted primarily for a purpose other than succeeding on the merits of the claim;

35. That *Seanna Lackey,and Master Muhammad* was harmed.

36. That Victor Valley Union High School District, Victor Valley Union High School District Student Attendance Review Board, Patricia Johnson Does 1 through 100's conduct was a substantial factor in causing *Seanna Lackey* 's harm. The Defendant caused injury to Plaintiffs reputation because of groundless allegations made in pleadings which are public records.

37."The malicious commencement of a civil proceeding is actionable because it harmed the

plaintiff , and also because it threatens the efficient administration of justice. The Plaintiff was

harmed  because I was  compelled to defend against a fabricated claim which  not only subjected

me to panoply of psychological pressures, but I also  suffered additional stress of attempting to

resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the

pleadings." (*Merlet v. Rizzo* (1998) 64 Cal.App.4th 53, 59 [75 Cal.Rptr.2d 83], internal citation

omitted.). I was harmed because I was denied my right to witnesses, and evidence, and a trial,

and was fined  for truancy due to the defendants lies. I was harmed because Patricia Johnson

failed  to inform the Judge that the defendants  breached the SARB Agreement, and never

implemented the agreement . Patricia Johnson  Failed to inform the Judge that she reneged on the

SARB Contract 3 hours after signing the SARB Agreement dated 10/27/2011. I was also harmed

because Patricia Johnson failed to inform the Judge that their  District Counsel sent Parent a

letter verifying that the district was not going to comply with the SARB Contract. I was harmed

because  Patricia Johnson gave  testimony on the stand during a court case, and told  many lies

to the court.

38.In an action for wrongful civil proceedings, subject to the control of the court, the jury

determines(a) the circumstances under which the proceedings were initiated in so far as may be

necessary to enable the court to determine whether the defendant had probable cause for

initiating them;(b) whether the defendant acted primarily for a purpose other than that of

securing the proper adjudication of the claim on which the proceeding was based;(c) the

circumstances under which the proceedings were terminated;(d) the amount that the plaintiff is

entitled to recover as general and special damages;(e) whether punitive damages are to be

awarded, and if so, in what amount.

Sixth CAUSE OF ACTION

(Perjury )

39.Plaintiff Seanna lackey, and Master Muhammad incorporates by reference paragraphs 39 through 40, inclusive, of this Complaint (including all paragraphs of the General Allegations and all paragraphs of all preceding causes of action, if any) as if the same were fully set forth herein.

40.On 4/11/2012 Patricia Johnson made a false statement in court after being sworn in for San Bernardino Superior Court Case number 3281239SL , and she promised to tell the truth in a legal situation. However she told lies under oath during the hearing ,she told the Judge that the SARB Board Could of provided Students NPA Aide, but she failed to provide proof or evidence that the district attempted to provide student with his NPA 1:1 Aid. Patricia Johnson failed to inform the Judge that the defendants breached the SARB Agreement, and never implemented the agreement . Patricia Failed to inform the Judge that she reneged on the SARB Contract 3 hours after signing the SARB Agreement dated 10/27/2011. Patricia Johnson failed to inform the Judge that their District Counsel sent Parent a letter verifying that the district was not going to comply with the SARB Contract. Patricia Johnson gave testimony on the stand during a court case, and told many lies to the court.

Seventh CAUSE OF ACTION

(False Advertisement )

Cal. Bus. & Prof. Code § 17500

41.Plaintiff Seanna lackey, and Master Muhammad incorporates by reference paragraphs 41 through 42, inclusive, of this Complaint (including all paragraphs of the General Allegations and all paragraphs of all preceding causes of action, if any) as if the same were fully set forth herein.

42.The statements in the Victor Valley Board Policy advertising are untrue or misleading and the defendants knew, or by the exercise of reasonable care should have known the statements in the Victor Valley Union High School District's Website Mission Statement " Victor Valley Union High School District will prepare all students to become responsible, productive citizens by providing a quality education in a safe, student-focused learning environment". This Statement is very Misleading, and untrue . The District has Failed to prepare student Master Muhammad to be responsible, productive citizens ,and has failed to provide a quality education in a safe, student-focused learning environment "The Statement listed in the Victor Valley Union High School Districts SARB Policy, and or it's Summary "The goal of SARBs is to keep students in school and provide them with a meaningful educational experience", and that the statements were untrue, and or misleading. *People v.Lynam*, 253 Cal.App.2d 959, 965 (1967).

Eighth CAUSE OF ACTION

(E.C. §48200 )

43.Plaintiff Seanna lackey, and Master Muhammad incorporates by reference paragraphs 43 through 53, inclusive, of this Complaint (including all paragraphs of the General Allegations and all paragraphs of all preceding causes of action, if any) as if the same were fully set forth herein.

44.The Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board denied plaintiffs participation in the Truancy policy, and they have also violated Board Policy - BP 5113.11.The VVUHSD SARB Board failed to conduct a full and impartial investigation of all school attendance complaints or referrals and cases of persistent irregular attendance or habitual truancy to the (SARB for a appropriate proper disposition. (*EC* 48262, 48263, 48290).They failed to give student the option of Charter School, Independent study so student could earn high school credit from 10/27/2011 until 5/25/2012 . As a result student missed school from 10/27/2011 until March 26,2012,and April 12,2012 until June 10,2012.

45.The Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board, and the Supervisor of Attendance failed to collaborate with all appropriate agencies, as partners in the SARB process to meet the special needs of pupils with school attendance or school behavior problems. (*EC* 48262, 48263, 48291). As a result student missed school from 10/27/2011 until March 26,2012,and April 12,2012 until June 10,2012.

46.The Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board failed to use vigilant supervision of attendance to improve attendance rates and graduation rates and to reduce truancy and dropout rates, which is vital to the learning and achievement of children on the margins of the educational system. Improving student attendance and reducing the dropout rate is a District priority. As a result student missed school from 10/27/2011 until March 26,2012,and April 12,2012 until June 10,2012.

47.The Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board, and the Supervisor of Attendance and/or Assistant Supervisor(s) of Attendance failed to Act as a resource to school, parent and District staff regarding attendance issues, and Plaintiffs were denied participation, and program options.

48.Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board, and the Supervisor of Attendance and/or Assistant Supervisor(s) of Attendance failed to Provide an opportunity for parents or guardians to challenge the accuracy of attendance records that could impact the determination of grades, CalWORKS benefits, or involuntary transfers (*EC* 49070). Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board, and the Supervisor of Attendance and/or Assistant Supervisor(s) of Attendance failed to verify that the students' private schools have filed Private School Affidavits with the State Superintendent of Public Instruction. (*EC* 48290, 48222, 48223, 48290, 48291)

*49.The Defendants Victor Valley Union high School District ,and Victor Valley Union High School SARB, and the Supervisor of Attendance and/or Assistant Supervisor(s) of Attendance failed to Developing and Coordinating Strategies for Truancy Reduction Coordinate truancy-prevention strategies based on the early identification of truancy, such as , assignments of weekend school instruction, and counseling for truants.*

50.The Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board, and the Supervisor of Attendance and/or Assistant Supervisor(s) of Attendance failed to maintain an inventory of local alternative educational programs and community resources, and employ those programs and resources to meet the differential needs of students Master Muhammad with school attendance or school behavior problems. The Defendants Victor Valley Union high School District ,and Victor Valley Union High School SARB, and the Supervisor of Attendance and/or Assistant Supervisor(s) of Attendance failed to Inform parents/guardians of truant students about alternative educational programs in the District to which the student may be assigned. (*EC* 48322).

*51.The Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board, and the Supervisor of Attendance and/or Assistant Supervisor(s) of Attendance failed to utilize their SARB Responsibilities for Dropout Prevention. They failed to Review the school attendance record and other documentation to determine the adequacy of all cases referred to the SARB and to determine if special arrangements or experts will be needed for the meeting.*

*52Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board faied to determine rather the referral contained inadequate information or if appropriate school-level intervention had been attempted. Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board failed to Ensure that SARB meetings maintain high expectations for all students, and ensure that families and youth are involved in selecting resources and services.*

53.Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board failed to Develop and submit follow-up reports to the SARB on all directives and agreements made at the SARB meetings, especially student agreements to attend school or improve school behavior.

54. The Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board, and the Supervisor of Attendance failed to collaborate with all appropriate agencies, as partners in the SARB process to meet the special needs of pupils with school attendance or school behavior problems ,because they failed to coordinate with the appropriate agencies student was denied his education at Victor valley High School, and became truant. (*EC* 48262, 48263, 48291)

55. The Defendants Victor Valley Union high School District ,and Victor Valley Union High School Student Attendance Review Board, and the Supervisor of Attendance failed to offer student independent study, weekend school, and or Charter school ,in an alternative school settings to meet the special needs of pupils with school attendance or school behavior problems. (*EC* 48262, 48263, 48291)

PRAYER

WHEREFORE, Plaintiffs individually and collectively pray as follows with regard to each of the above causes of action which may be asserted by the one or more of the various Plaintiffs

Cause Of Action AS TO THE FIRST CAUSE OF ACTION:

1. For general and specific damages according to proof at time of trial;

2. For attorneys' fees and costs according to proof;

3. For interest as allowed by law; and

4. For cost of suit herein.

5.For Compensatory NPA 1:1 ABA Aide Hours

6.For Compensatory Education Tutoring to be provided by Parent Choice Tutoring

7. For Punitive damages.

8. For Emotional, Psychological, pain and suffering

Cause Of Action AS TO THE Second CAUSE OF ACTION:

1. For general and specific damages according to proof at time of trial;

2. For attorneys' fees and costs according to proof;

3. For interest as allowed by law; and

4. For cost of suit herein

5.For Compensatory NPA 1:1 ABA Aide Hours

6.For Compensatory Education Tutoring to be provided by parent Choice Tutoring

7. For Punitive damages.

8. For 1,000,000 Emotional, Psychological, pain and suffering

9. Independant Study

Cause Of Action as To the Third Cause Of Action

1. For general and specific damages according to proof at time of trial;

2. For attorneys' fees and costs according to proof;

3. For interest as allowed by law; and

4. For cost of suit herein.

5.For Compensatory NPA 1:1 ABA Aide Hours

6.For Compensatory Education Tutoring to be provided by parent Choice Tutoring

7. For Punitive damages.

8. For emotional, Psychological, pain and suffering

9. Independant Study

Cause Of Action  as To the Fourth Cause Of Action

     1. For general and specific damages according to proof at time of trial;

     2. For attorneys' fees and costs according to proof;

     3. For interest as allowed by law; and

     4. For cost of suit herein.

     5.For Compensatory  NPA 1:1 ABA Aide Hours

     6.For Compensatory  Education Tutoring  to be provided by parent Choice Tutoring

     7. For Punitive damages.

     8. For emotional, Psychological, pain and suffering

Cause Of Action  as To the Fifth  Cause Of Action

     1. For general and specific damages according to proof at time of trial;

     2. For attorneys' fees and costs according to proof;

     3. For interest as allowed by law; and

     4. For cost of suit herein.

     5.For Compensatory  NPA 1:1 ABA Aide Hours

     6.For Compensatory  Education Tutoring  to be provided by parent Choice Tutoring

     7. For Punitive damages.

     8. For 1,000,000 emotional, Psychological, pain and suffering

Cause Of Action  as To the Sixth  Cause Of Action

     1. For general and specific damages according to proof at time of trial;

     2. For attorneys' fees and costs according to proof;

     3. For interest as allowed by law; and

     4. For cost of suit herein.

     5.For Compensatory  NPA 1:1 ABA Aide Hours

     6.For Compensatory  Education Tutoring  to be provided by parent Choice Tutoring

     7. For Punitive damages.

     8. For emotional, Psychological, pain and suffering

     9.For  truancy penalty fine of $450.

     10   Order Of Contempt Of Court

     11.Order Of Prosecution against the Defendants  Patricia Johnson

Cause Of Action  as To the Seventh   Cause Of Action

     1. For general and specific damages according to proof at time of trial;

     2. For attorneys' fees and costs according to proof;

     3. For Injunctive relief and restitution

     4. For cost of suit herein, and The remedies or penalties are cumulative.

     5.For Compensatory  NPA 1:1 ABA Aide Hours

     6.For Compensatory  Education Tutoring  to be provided by parent Choice Tutoring

     7. For Punitive damages.

     8. For emotional, Psychological, pain and suffering

Cause Of Action as To the Eighth Cause Of Action

1. For general and specific damages according to proof at time of trial;

2. For attorneys' fees and costs according to proof;

3. For Injunctive relief and restitution

4. For cost of suit herein, and The remedies or penalties are cumulative.

5.For Compensatory NPA 1:1 ABA Aide Hours

6.For Compensatory Education Tutoring to be provided by parent Choice Tutoring

7. For Punitive damages.

8. For 1,000,0000 emotional, Psychological, pain and suffering

9.For truancy penalty fine of $450.

10 Order Of Contempt Of Court

11.Order Of Prosecution against the Defendants Patricia Johnson

12.An Order , Prosecuting District personnel who continually and willfully fail to respond to SARB directives or services. (*EC* 48290)

13. Independant Study

CAUSE OF ACTION as To the ninth Cause Of Action

RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment as follows:

1. An order enjoining Victor Valley Union High School District, Victor Valley Union High School District Student Attendance Review Board, Patricia Johnson Does 1 through 100 from committing fraud, Breach Of contract, and from violating Education Code against its Parents, and Students who attend it's district.

2. A declaration that Victor Valley Union High School District, Victor Valley Union High School District Student Attendance Review Board, Patricia Johnson Does 1 through 100 is owning, maintaining and/or operating Victor Valley Union High School District Student Attendance Review Board in a manner which is Deceitful, fraudulent ,and makes false promises, and breaches it's SARB Agreements, and has caused injury to Parents ,and to its students;

3. Plaintiffs' reasonable attorneys' fees and costs .

4. For general damages according to proof,

5. For special damages according to proof,

6. For exemplary damages,

7. Punitive Damages

8.For Compensatory NPA 1:1 ABA Aide Hours

9.For Compensatory Education Tutoring to be provided by parent Choice Tutoring

10.For Punitive damages.

11.For Emotional, Psychological, pain and suffering

12.Such other and further relief as the Court deems just and proper.

13. Independant Study

DEMAND FOR JURY TRIAL. Plaintiff hereby demands a trial by jury in this matter.

DATED: May 25, 2012

By: ______________________

Seanna Lackey

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[Summary of pleading] - 25

MC-050

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Zein E. Obagi, Jr. (State Bar No. 264139)
THE OBAGI LAW GROUP
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
TELEPHONE NO.: (424) 245-4217 FAX NO. (Optional): (310) 734-1814
E-MAIL ADDRESS (Optional): zobagi@obagilaw.com
ATTORNEY FOR (Name): Plaintiffs Seanna Lackey & Master Muhammad

FOR COURT USE ONLY

COPY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
VICTORVILLE DISTRICT
DEC 11 2012
BY Michelle Carter
MICHELLE CARTER DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS: 14455 Civic Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Victorville, CA 92392
BRANCH NAME: Victorville Courthouse

CASE NAME:
LACKEY v. VICTOR VALLEY UNION HIGH SCHOOL DISTRICT

**SUBSTITUTION OF ATTORNEY—CIVIL**
**(Without Court Order)**

CASE NUMBER: CIV VS1202510

THE COURT AND ALL PARTIES ARE NOTIFIED THAT (name): SEANNA LACKEY makes the following substitution:

1. **Former legal representative** [✓] Party represented self [ ] Attorney (name):
2. **New legal representative** [ ] Party is representing self* [✓] Attorney
   a. Name: ZEIN E. OBAGI, JR. b. State Bar No. (if applicable): 264139
   c. Address (number, street, city, ZIP, and law firm name, if applicable):
   THE OBAGI LAW GROUP
   433 NORTH CAMDEN DRIVE, SUITE 400, BEVERLY HILLS, CA 90210
   d. Telephone No. (include area code): (310) 742-7599
3. The party making this substitution is a [✓] plaintiff [ ] defendant [ ] petitioner [ ] respondent [ ] other (specify):

***NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES**

- **Guardian**
- **Conservator**
- **Trustee**
- **Personal Representative**
- **Probate fiduciary**
- **Corporation**
- **Guardian ad litem**
- **Unincorporated association**

**If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.**

**NOTICE TO PARTIES WITHOUT ATTORNEYS**
**A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences.**

4. I consent to this substitution.
   Date: 12/ /2012
   SEANNA LACKEY
   (TYPE OR PRINT NAME) (SIGNATURE OF PARTY)
5. [ ] I consent to this substitution.
   Date:
   (TYPE OR PRINT NAME) (SIGNATURE OF FORMER ATTORNEY)
6. [✓] I consent to this substitution.
   Date: 12/10/2012
   ZEIN E. OBAGI, JR.
   (TYPE OR PRINT NAME) (SIGNATURE OF NEW ATTORNEY)

(See reverse for proof of service by mail)

Form Adopted For Mandatory Use
Judicial Council of California
MC-050 [Rev. January 1, 2009]

**SUBSTITUTION OF ATTORNEY—CIVIL**
**(Without Court Order)**

Page 1 of 2
Code of Civil Procedure, §§ 284(1), 285;
Cal. Rules of Court, rule 3.1362
www.courtinfo.ca.gov

MC-050

| CASE NAME: LACKEY v. VICTOR VALLEY UNION HIGH SCHOOL DISTRICT | CASE NUMBER: CIV VS1202510 |
|---|---|

## PROOF OF SERVICE BY MAIL
## Substitution of Attorney—Civil

**Instructions:** *After having all parties served by mail with the Substitution of Attorney—Civil, have the person who mailed the document complete this Proof of Service by Mail. An* *unsigned* *copy of the Proof of Service by Mail should be completed and served with the document. Give the Substitution of Attorney—Civil and the completed Proof of Service by Mail to the clerk for filing. If you are representing yourself, someone else must mail these papers and sign the Proof of Service by Mail.*

1. I am over the age of 18 and **not a party to this cause.** I am a resident of or employed in the county where the mailing occurred. My residence or business address is *(specify)*:
   433 North Camden Drive, Suite 400 Beverly Hills, CA 90210
2. I served the Substitution of Attorney—Civil by enclosing a true copy in a sealed envelope addressed to each person whose name and address is shown below and depositing the envelope in the United States mail with the postage fully prepaid.
   (1) Date of mailing: 12/10/2012 (2) Place of mailing *(city and state)*: Los Angeles, CA
3. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 12/10/2012

ZEIN E. OBAGI, JR.
(TYPE OR PRINT NAME)

(SIGNATURE)

**NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED**

4. a. Name of person served: Victor Valley Union High School District
   b. Address *(number, street, city, and ZIP)*:
   16350 Mojave Drive Victorville, CA 92395

   c. Name of person served:
   d. Address *(number, street, city, and ZIP)*:

   e. Name of person served:
   f. Address *(number, street, city, and ZIP)*:

   g. Name of person served:
   h. Address *(number, street, city, and ZIP)*:

   i. Name of person served:
   j. Address *(number, street, city, and ZIP)*:

☐ List of names and addresses continued in attachment.

MC-050

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Zein E. Obagi, Jr. (State Bar No. 264139)
THE OBAGI LAW GROUP
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
TELEPHONE NO.: (424) 245-4217 FAX NO. (Optional): (310) 734-1814
E-MAIL ADDRESS (Optional): zobagi@obagilaw.com
ATTORNEY FOR (Name): Plaintiffs Seanna Lackey & Master Muhammad

FOR COURT USE ONLY

COPY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
VICTORVILLE DISTRICT

DEC 11 2012

BY Michelle Carter
MICHELLE CARTER DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS: 14455 Civic Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Victorville, CA 92392
BRANCH NAME: Victorville Courthouse

CASE NAME:
LACKEY v. VICTOR VALLEY UNION HIGH SCHOOL DISTRICT

**SUBSTITUTION OF ATTORNEY—CIVIL**
**(Without Court Order)**

CASE NUMBER:
CIV VS1202510

THE COURT AND ALL PARTIES ARE NOTIFIED THAT (name): MASTER MUHAMMAD makes the following substitution:

1. **Former legal representative** [✓] Party represented self [ ] Attorney (name):
2. **New legal representative** [ ] Party is representing self* [✓] Attorney
   a. Name: ZEIN E. OBAGI, JR. b. State Bar No. (if applicable): 264139
   c. Address (number, street, city, ZIP, and law firm name, if applicable):
   THE OBAGI LAW GROUP
   433 NORTH CAMDEN DRIVE, SUITE 400, BEVERLY HILLS, CA 90210
   d. Telephone No. (include area code): (310) 742-7599
3. The party making this substitution is a [✓] plaintiff [ ] defendant [ ] petitioner [ ] respondent [ ] other (specify):

***NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES**

- **Guardian**
- **Conservator**
- **Trustee**
- **Personal Representative**
- **Probate fiduciary**
- **Corporation**
- **Guardian ad litem**
- **Unincorporated association**

**If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.**

**NOTICE TO PARTIES WITHOUT ATTORNEYS**
**A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences.**

4. I consent to this substitution.
Date: 12/ /2012
SEANNA LACKEY, guardian ad litem for M.M.
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY)

5. [ ] I consent to this substitution.
Date:
(TYPE OR PRINT NAME) (SIGNATURE OF FORMER ATTORNEY)

6. [✓] I consent to this substitution.
Date: 12/10/2012
ZEIN E. OBAGI, JR.
(TYPE OR PRINT NAME) (SIGNATURE OF NEW ATTORNEY)

(See reverse for proof of service by mail)

Page 1 of 2

Form Adopted For Mandatory Use
Judicial Council of California
MC-050 [Rev. January 1, 2009]

**SUBSTITUTION OF ATTORNEY—CIVIL**
**(Without Court Order)**

Code of Civil Procedure, §§ 284(1), 285;
Cal. Rules of Court, rule 3.1362
www.courtinfo.ca.gov

MC-050

| CASE NAME: | CASE NUMBER: |
|---|---|
| LACKEY v. VICTOR VALLEY UNION HIGH SCHOOL DISTRICT | CIV VS1202510 |

**PROOF OF SERVICE BY MAIL**
**Substitution of Attorney—Civil**

**Instructions:** *After having all parties served by mail with the Substitution of Attorney—Civil, have the person who mailed the document complete this Proof of Service by Mail. An* unsigned *copy of the Proof of Service by Mail should be completed and served with the document. Give the Substitution of Attorney—Civil and the completed Proof of Service by Mail to the clerk for filing. If you are representing yourself, someone else must mail these papers and sign the Proof of Service by Mail.*

1. I am over the age of 18 and **not a party to this cause.** I am a resident of or employed in the county where the mailing occurred. My residence or business address is *(specify)*:
433 North Camden Drive, Suite 400 Beverly Hills, CA 90210

2. I served the Substitution of Attorney—Civil by enclosing a true copy in a sealed envelope addressed to each person whose name and address is shown below and depositing the envelope in the United States mail with the postage fully prepaid.

(1) Date of mailing: 12/10/2012 (2) Place of mailing *(city and state)*: Los Angeles, CA

3. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 12/10/2012

ZEIN E. OBAGI, JR.
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE)

**NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED**

4. a. Name of person served: Victor Valley Union High School District
b. Address *(number, street, city, and ZIP)*:
16350 Mojave Drive Victorville, CA 92395

c. Name of person served:
d. Address *(number, street, city, and ZIP)*:

e. Name of person served:
f. Address *(number, street, city, and ZIP)*:

g. Name of person served:
h. Address *(number, street, city, and ZIP)*:

i. Name of person served:
j. Address *(number, street, city, and ZIP)*:

☐ List of names and addresses continued in attachment.

# EXHIBIT 3

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

COPY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
VICTORVILLE DISTRICT
MAR 11 2013
BY DIANA HERNANDEZ, DEPUTY

Zein E. Obagi, Jr. (State Bar No. 264139)
zobagi@obagilaw.com
THE OBAGI LAW GROUP
433 North Camden Drive, Suite 400
Beverly Hills, California 90210
Tel: (424) 245-4217 Fax: (310) 734-1814

Hee J. Kim (State Bar No. 275010)
hee@milwaki.com
MILLER WASHINGTON & KIM, LLP
725 Washington Street, Suite 300
Oakland, California 94607
Tel: (510) 891-0616 Fax: (510) 839-9857

Attorneys for Plaintiffs,
STUDENT M.M., by and through his guardian ad litem, Seanna Lackey, and SEANNA LACKEY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN BERNARDINO**

STUDENT M.M., by and through his guardian ad litem, Seanna Lackey; and SEANNA LACKEY,

Plaintiffs,

v.

VICTOR VALLEY UNION HIGH SCHOOL DISTRICT; GAYLE HINAZUMI; JEANETTE ANDERSON; GREG JOHNSON; PATRICIA JOHNSON; CHRIS DOUGLAS; JEFF ROBINSON; DAVID ENRIQUEZ; ELVIN MOMON; KENDALL DAWSON; and DOES 1-100, Inclusive,

Defendants.

Case No.: CIV VS1202510

**FIRST AMENDED COMPLAINT**

**UNLIMITED JURISDICTION**

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

# TABLE OF CONTENTS

I. PARTIES .......... 1

II. JURISDICTION AND VENUE .......... 6

III. STATUTORY BASIS FOR DISTRICT'S LIABILITY .......... 7

IV. GENERAL ALLEGATIONS .......... 8

A. FIRST CAUSE OF ACTION FOR ASSAULT OF A MINOR .......... 17

a. First Count: Dawson's Assault of Student .......... 17

Student v. District; Dawson; Does 1–100 .......... 17

b. Second Count: Security Personnel's Assault of Student .......... 19

Student v. District; Robinson; Enriquez; Does 1–100 .......... 19

B. SECOND CAUSE OF ACTION FOR BATTERY OF A MINOR .......... 20

a. First Count: Dawson's Battery of Student .......... 20

Student v. District; Dawson; Does 1–100 .......... 20

b. Second Count: Security Personnel's Battery of Student .......... 21

Student v. District; Robinson; Enriquez; Does 1-100 .......... 21

C. THIRD CAUSE OF ACTION FOR EXCESSIVE FORCE WITH A MINOR .......... 22

Student v. District; Robinson; Enriquez; Does 1-100 .......... 22

D. FOURTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .......... 23

a. First and Second Count: Assigning Dawson to Student, and Dawson's Search .......... 23

Student v. District; Hinazumi; Anderson; Mr. Johnson; Dawson; Does 1-100 .......... 23

b. Third Count: Security Personnel's Assault and Battery .......... 27

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

Plaintiffs v. District; Robinson; Enriquez; Does 1-100............27

c. Fourth and Fifth Counts: Assigning Dawson to Student and Dawson's Search............28

Parent v. District; Hinazumi; Anderson; Mr. Johnson; Dawson; Does 1-100............28

E. FIFTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS............29

a. First Count: District Assignment of Dawson to Student..........29

Student v. District; Hinazumi; Anderson; Mr. Johnson; Does 1-100............29

b. Second Count: District Assignment of Dawson to Student .....30

Parent v. District; Hinazumi; Anderson; Mr. Johnson; Does 1-100............30

c. Third Count: Security Personnel's Assault and Battery...........31

Student v. District; Robinson; Enriquez; Does 1-100 ..............31

F. SIXTH CAUSE OF ACTION FOR NEGLIGENT SUPERVISION............32

Plaintiffs v. District; Hinazumi; Anderson; Mr. Johnson; Momon; Does 1–100 ............32

G. SEVENTH CAUSE OF ACTION FOR NEGLIGENCE..................33

a. First Count: Assigning Dawson as Student's Aide ..................33

Student v. District; Hinazumi; Anderson; Mr. Johnson; Does 1–100 ............33

b. Second Count: Dawson's Misconduct............34

Student v. District; Dawson; Does 1–100 ............34

c. Third Count: Security Personnel's Misconduct ............35

Student v. District; Robinson; Enriquez; Does 1–100 .............35

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

d. Fourth Count: Negligent Hiring, Training and Supervising of Dawson and Security Personnel ........ 36

Student v. District; Momon; Hinazumi; Mr. Johnson; Anderson; Does 1–100 ........ 36

e. Fifth Count: Failure to Keep Lakeview Middle School Open to Disabled Students ........ 37

Student v. District; Momon; Mr. Johnson; Does 1–100 ........ 37

f. Sixth Count: Failure to Keep High School Open to Disabled Students ........ 38

Student v. District; Momon; Hinazumi; Douglas; Does 1–100 ........ 38

H. EIGHTH CAUSE OF ACTION FOR VIOLATION OF UNRUH CIVIL RIGHTS ACT ........ 39

a. First Count: Assigning Untrained Aide to Student ........ 39

Student v. District; Hinazumi; Anderson; Mr. Johnson; Does 1–100 ........ 39

b. Second Count: Targeting Student for Search Lacking Reasonable Suspicion, Probable Cause or Warrant ........ 41

Student v. District; Dawson; Does 1–100 ........ 41

c. Third Count: Targeting Student for Assault, Battery and or Excessive Force ........ 41

Student v. District; Dawson; Robinson; Enriquez; Does 1–100 ........ 41

d. Fourth Count: Intentionally Failing to Provide Student a Highly Qualified Aide in Breach of District's Contractual Obligations ........ 42

Student v. District; Hinazumi; Anderson; Mrs. Johnson; Does 1–100 ........ 42

e. Fifth Count: Denying Student Entry to Lakeview Middle School ........ 43

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

Student v. District; Hinazumi; Anderson; Mr. Johnson; Does 1–100 .......... 43

f. Sixth Count: Denying Student Access to Victor Valley High School .......... 44

Student v. District; Hinazumi; Douglas; Does 1–100 .......... 44

g. Seventh Count: Other Incidents of Discrimination Identified by the California Department of Education .......... 45

Student v. District; Hinazumi; Anderson; Mr. Johnson; Douglas; Does 1–100 .......... 45

I. NINTH CAUSE OF ACTION FOR BREACH OF 2010 SETTLEMENT AGREEMENT .......... 47

Plaintiffs v. District; Does 1–100 .......... 47

J. TENTH CAUSE OF ACTION FOR BREACH OF 2011 SARB AGREEMENT .......... 48

Plaintiffs v. District; Mrs. Johnson; Does 1–100 .......... 48

K. ELEVENTH CAUSE OF ACTION FOR FRAUD UNDER 2011 SARB AGREEMENT .......... 49

Plaintiffs v. District; Mrs. Johnson; Does 1–100 .......... 49

L. TWELFTH CAUSE OF ACTION FOR VIOLATION OF THE REHABILITATION ACT (29 U.S.C. § 794) .......... 51

a. First Count: Denial of Entry to School on April 12, 2011 .......... 51

Student v. District; Momon; Hinazumi; Anderson; Mr. Johnson; Does 1–100 .......... 51

b. Second Count: Denial of Entry to School in August, 2011 .......... 52

Student v. District; Momon; Hinazumi; Douglas; Does 1–100 .......... 52

c. Third Count: Other Incidents of Discrimination Identified by California Department of Education .......... 54

Student v. District; Momon; Hinazumi; Anderson; Mr.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

Johnson; Douglas; Does 1–100 .......... 54

M. THIRTEENTH CAUSE OF ACTION FOR ABUSE OF PROCESS .......... 56

Parent v. District; Mrs. Johnson; Does 1–100 .......... 56

N. FOURTEENTH CAUSE OF ACTION FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C § 1983) .......... 59

a. First Count: Procedural and Substantive Due Process, and Equal Protection Violation .......... 59

Student v. District; Hinazumi; Anderson; Mr. Johnson; Does 1-100 .......... 59

b. Second Count: Dawson's Unreasonable Search and Seizure of Student, and Depravation of Equal Protection on April 6, 2011 .......... 61

Student v. Dawson; Does 1–100 .......... 61

c. Third Count: Excessive Use of Force—Unreasonable Detention, and Depravation of Equal Protection for Excessive Force by Security Guards .......... 63

Student v. Robinson; Enriquez; Does 1-100 .......... 63

d. Fourth Count: Procedural and Substantive Due Process, and Equal Protection Violation for Denial of Entry to Lakeview on April 12, 2011 .......... 64

Student v. District; Momon; Mr. Johnson; Does 1-100 .......... 64

e. Fifth Count: Procedural and Substantive Due Process, And Equal Protection Violation for Depravation of NPA 1:1 Aide at High School .......... 66

Student v. District; Hinazumi; Douglas; Momon; Does 1-100 .......... 66

f. Fifth Count: Procedural and Substantive Due Process, and Equal Protection Violation for Breach of Duties Assumed Under SARB Agreement .......... 68

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

Student v. District; Mrs. Johnson; Hinazumi; Douglas; Momon; Does 1-100 ........ 68

g. Sixth Count: Other Procedural and Substantive Due Process Violations Identified by the California Department of Education ........ 70

Student v. District; Hinazumi; Anderson; Mrs. Johnson; Mr. Johnson; Douglas; Does 1–100 ........ 70

V PRAYER FOR RELIEF ........ 73

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

Plaintiff Student M.M., a minor represented by and through his guardian at litem, Seanna Lackey, and Plaintiff Seanna Lackey allege:

## I. PARTIES

1. Student is currently a 15 year-old minor who is diagnosed with autism, bipolar disorder, and attention deficit hyperactive disorder (ADHD). His date of birth is December 19, 1997, and he was 13 years-old at relevant times herein.

a. Student is African American and his legal name of birth consists of religious terms that could cause him undue prejudice and unfair bias in this legal proceeding and, on that basis, has been omitted from these allegations. Student complains, amongst other things, of the traumatic physical and emotional injuries he sustained at age 13 while under Defendant Victor Valley Union High School District's supervision and care at Lakeview Middle School. Student also complains of District's fraud, breach of contract, and other violation of numerous state and federal laws.

b. At all relevant times herein, Student was a resident of Victorville, California, enrolled in the District and qualified for special education services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq*.

c. At all relevant times herein, Student was a student at Lakeview Middle School or Victor Valley High School.

2. Seanna Lackey, or Parent, has been duly appointed Student's guardian ad litem (GAL) in San Bernardino County Civil Case No. CIV VS 1201743. Ms. Lackey separately and individually complains of emotional distress she sustained while and after witnessing District cause traumatic injury to her then 13 year-old son, and for damages sustained from District's fraud, breach of contract, abuse of process, and other violations of numerous state and federal laws.

3. At all relevant times herein, Defendant District is and was a local education agency in the County of San Bernardino that receives Federal financial

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

assistance funding for its programs and activities. District is, and has been at all relevant times, the owner, operator, manager, and/or proprietor of Lakeview Middle School and Victor Valley High School, both located in Victorville, California. The acts giving rise to District's liability in this case occurred at Lakeview and the High School. At all relevant times, District assumed various obligations and duties of care in educating students under its supervision, including Student. In doing all the things herein alleged, District proximately caused injury to Student through its employees, agents, or representatives who, at all relevant times, were acting within the scope of their employment for District when they injured Student. These employees, agents and representatives are named in this suit as fellow defendants, to the extent their names are known at this time.

4. On information and belief, the Student Attendance Review Board (SARB) of the District is an entity within District's employ, supervision, or control. District is vicariously liable for the acts of its employees, agents and representatives at Lakeview, the High School, and those who serve on the SARB. At all relevant times, the SARB was aware of the decisions that were made with regard to Student's education and enrollment at Victor Valley High, and ratified all such action.

5. At all relevant times herein, Defendant Gayle Hinazumi was and is District's Director of Special Education. Her duties under the scope of her employment included managing District's compliance with its obligations under disabled students' Individualized Educational Programs (IEPs), including the assignment of aides for students whose IEPs require them. At all relevant times, Hinazumi was aware of the decisions that were made with regard to Student's education and enrollment at Lakeview and Victor Valley High, and ratified all such action. On information and belief, Hinazumi resides in San Bernardino County, California.

6.     On information and belief, at all relevant times herein, Defendant Jeanette Anderson was and is in charge of special education services at Lakeview Middle School. Her duties under the scope of her employment included managing Lakeview's compliance with its obligations under disabled students' Individualized Educational Programs (IEPs), including the assignment of aides for students whose IEPs require them. At all relevant times, Anderson was aware of the decisions that were made with regard to Student's education and enrollment at Lakeview, and ratified all such action.   On information and belief, Anderson resides in San Bernardino County, California.

7.     On information and belief, at all relevant times herein, Defendant Greg Johnson was the principal at Lakeview Middle School. At all relevant times, the duties under his scope of employment include, amongst other things, ensuring that all students at Lakeview receive equal access to a free appropriate public educations, and that no student is discriminated against or excluded solely based on his or her disability, color, race, or religion. At all relevant times, Mr. Johnson was aware of the decisions that were made with regard to Student's education and enrollment at Lakeview, and ratified all such action.  On information and belief, Johnson resides in San Bernardino County, California, and was at all relevant times married to Defendant Patricia Johnson.

8.     On information and belief, at all relevant times herein, Defendant Patricia Johnson was and is an individual employee of District. Mrs. Johnson serves as District's Senior Director of Child Welfare and Attendance, and as SARB chairwoman.   At all relevant times, the duties under her scope of employment include, amongst other things, overseeing students' attendance issues and resolving them, and in good faith, prosecuting truancy cases in which District fulfilled all of its obligations but students and or their parents did not, without discriminating on the basis of a student's disability, color, race and or religion. At all relevant times, Johnson was aware of the decisions that were made with regard to Student's

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

education and enrollment at Lakeview and the High School, and ratified all such action. On information and belief, Mrs. Johnson resides in San Bernardino County, California, and was, at all relevant times, married to Defendant Greg Johnson.

9. On information and belief, at all relevant times herein, Defendant Chris Douglas was and is the principal of Victor Valley High School. At all relevant times, the duties under his scope of employment included, amongst other things, ensuring that all students at Victor Valley High School receive equal access to a free appropriate public educations, and that no student is discriminated against or excluded solely based on his or her disability, color, race, or religion. At all relevant times, Douglas was aware of the decisions that were made with regard to Student's education and enrollment at Victor Valley High, and ratified all such action. On information and belief, Douglas resides in San Bernardino County, California.

10. On information and belief, at all relevant times herein, Defendant Jeff Robinson was and is a security guard employed at Lakeview. The scope of his employment including managing security of the Lakeview campus, including all pupils thereon, and responding to security threats with the minimum amount of force necessary to diffuse them. On information and belief, Robinson resides in San Bernardino County, California.

11. On information and belief, at all relevant times herein, Defendant David Enriquez was and is a security guard employed at Lakeview. The scope of his employment including managing security of the Lakeview campus, including all pupils thereon, and responding to security threats with the minimum amount of force necessary to diffuse them. On information and belief, Enriquez resides in San Bernardino County, California.

12. On information and belief, at all relevant times herein, the Board of Trustees of the Victor Valley Union High School District was and is an aggregation of individuals charged with making high-level decisions for District, including how

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

Student's education would be handled, and what resources would or would not be provided to Student. On information and belief, the Board of Trustees is an entity within District's employ, supervision, or control. At all relevant times, the Board of Trustees of the Victor Valley Union High School District was aware of the decisions that were made with regard to Student's education and enrollment at Lakeview and Victor Valley High, and ratified all such action.

13. On information and belief, at all relevant times herein, Defendant Elvin Momon was, and is, District's Superintendent. He made and makes decisions or otherwise ratifies the Board's decisions regarding Student's education, treatment, enrollment, suspension and what resources would or would not be provided to Student. At all relevant times, Momon was aware of the decisions that were made with regard to Student's education and enrollment at Lakeview and Victor Valley High, as alleged herein, and ratified all such action.

14. On information and belief, in late March or early April 2011, and at other times as alleged herein, Defendant Kendall Dawson was the aide assigned to assist Student in his classes. At all relevant times, Dawson was not a "highly qualified" aide. Further, Dawson developed an antagonistic relationship with Student, which was at the source of and a substantial factor in the cause of the damages Student and Parent sustained on or about April 6, 2011.

15. **Defendants Does 1 through 100**, inclusive, are sued herein under fictitious names. Their true names or capacities are unknown to Student. When their true names and capacities are ascertained, Student will amend this complaint by inserting their true names and capacities herein. On information and belief, each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged. Student's damages as herein alleged were proximately caused by the Doe defendants, amongst others. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant refers also to all defendants sued under fictitious names.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

16.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, each of the defendants, including all defendants sued under fictitious names, was the agent, employee and or representative of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the course and scope of this agency and employment with the full knowledge and consent of the remaining defendants. Further, each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof.

17.     Similarly, each of the persons who are mentioned in this complaint, but not named as a party, was the agent, employee or representative of District, and in doing the things hereinafter alleged, was acting with the course and scope of this agency and employment with the full knowledge and consent of District. Further, each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof.

18.     Further, each and all of the acts herein alleged as to each mentioned non-party was authorized and directed by District, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof.

## II.    JURISDICTION AND VENUE

19.     The Superior Court of California, for the County of San Bernardino has jurisdiction over this matter, and is one correct venue for this action because the acts and omissions giving rise to the claims in this complaint occurred in the County of San Bernardino, California and District's principal place of business and headquarters are located in the County of San Bernardino.   On information and belief, the amount of damages in controversy falls within the unlimited jurisdiction of this court.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

20. The United States District Court for the Central District of California also has jurisdiction over this matter because this case raises substantive questions of Federal constitutional and statutory law and, on information and belief, all defendants are located or reside in the Central District of California.

## III. STATUTORY BASIS FOR DISTRICT'S LIABILITY

21. Amongst other statutes, District is subject to liability for the acts and omissions alleged in this complaint under Section 815.2(a) of the California Government Code, which reads:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

22. In addition, the law imposes liability on a school district or board when it fails to exercise reasonable care under a set of circumstances:

> District, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee or of such district or board.

Cal. Ed. Code § 44808.

23. District is also liable under California's Unruh Civil Rights Act, Civil Code Sections 51 and 52, which provide that businesses cannot discriminate based on sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation.

24. District is also subject to liability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which forbids organizations from

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

discriminating against or excluding individuals from Federally-funded programs or activities solely on the basis of his or her disability.

25. District is also subject to liability under 42 U.S.C. § 1983, which subjects to liability and suit District and every person who, under color of any statute, ordinance, regulation, custom or usage, subjects or causes to be subjected to the depravation of any rights, privileges or immunities secured by the U.S. Constitution and laws of the United States.

26. In bringing the claims herein, Student has complied with the notice requirements of the Torts Claims Act, California Government Code § 815, *et seq.* In October 2011, Parent filed a written claim with District, on her own behalf and Student's behalf, notifying District of the claims against it and stating the facts alleged in this complaint. True copies of Plaintiffs' claim letters are attached as **EXHIBIT 1** and incorporated by reference as though they are fully set forth here.

27. By mid-December, 2011, District formally denied all of Student and Parents' claims. True copies of District's claims denials are attached as **EXHIBIT 2** and incorporated by reference as though they are fully set forth here.

## IV. GENERAL ALLEGATIONS

28. At all relevant times herein, Student was enrolled in District and under the immediate and direct supervision of an employee, agent or representative of District. Since approximately March, 2010, Student was enrolled at Lakeview.

29. At that time, Student's IEP included a behavioral support plan (BSP), identifying his know behavioral needs and triggers, and positive intervention strategies and support services. On or around May 21 or June 8, 2010, District changed Student's BSP to a behavioral intervention plan (BIP), in an effort to ensure that Student's behavior did not impede his learning or others'

30. A BIP must include: (a) a summary of the information from a functional analysis/behavioral assessment (FAA/FBA); (b) an objective and

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

measureable description of the targeted serious behaviors and positive replacement behaviors; (c) goals and objectives specific to the targeted behaviors; (d) a detailed description of the behavior interventions to be used and the circumstances for their use; (e) schedules for recording the frequency of interventions and replacement behaviors; (f) criteria for determining when the interventions will be phased out or replaced with less intense or less frequent interventions; (g) the extent to which interventions will be used in the student's home and in other settings; and (h) specific dates for the IEP team to review the BIP's effectiveness. 5 C.C.R. § 3001(g). It must be sufficiently detailed so it may be easily and effectively implemented. Id., at § 3052(c).

31. District is obligated to provide a safe and healthy environment for all children regardless of possible physical, mental or emotionally disabling conditions. Cal. Ed. Code § 56520(a). BIPs must consider the pupil's physical freedom and be administered in a manner that respects human dignity and personal privacy. Id. at § 56520(b)(1)(emphasis added); 5 C.C.R. § 3001(d). "Behavioral intervention" means the systematic implementation of procedures that result in lasting positive changes in the individual's behavior; it means the design, implementation and evaluation of individual instructional and environmental modifications to produce significant improvements in human behavior through skill acquisition and the reduction of problematic behavior. 5 CCR § 3001(d).

32. District is obligated to prescribe and enforce rules consistent with the law. Cal. Ed. Code § 35010. It has the duty to fix and prescribe the duties of all persons in public school service. Id. at § 35020. It has the duty to "give diligent care to the health and physical development of pupils." Id. at § 49400. District is liable for the safety of any pupil while that pupil is or should be under the immediate and direct supervision of a District employee. See Id. at § 44808.

33.     California students of elementary, junior high, and high school age have an inalienable right to education, and a public campus that is safe, secure and peaceful. Cal. Const. Art. 1, § 28(f)(1);  5 CCR § 700(b)(14).

34.     In or about February, 2010, District negligently assigned its employee or agent, Kendall Dawson, as a one to one (1:1) educational aide to Student at Lakeview. On information and belief, Dawson did not have any formal education or training in working with students with needs similar to Student's. At all relevant times herein, Dawson acted within the scope of his employment for District when he performed the acts or omissions herein alleged.

35.     On or about March 16, 2010, Parent and District resolved a pending due process complaint concerning Student's free and public education (FAPE) with a written settlement agreement (2010 Settlement Agreement). Among other terms, District agreed to provide Student with a dedicated 1:1 aide who was "highly qualified." By its terms, the 2010 Settlement Agreement was made enforceable "in any State court of competent jurisdiction or in a district court of the United States." A true copy of the 2010 Settlement Agreement is attached hereto as **EXHIBIT 3**, and incorporated by reference as though it is fully set forth here.

36.     Also in or around April 2010, District replaced Dawson as Student's aide with Joe Malady, on information and belief, in an attempt to comply with its obligation to provide Student with a "highly qualified" 1:1 aide.

37.     On or around April 7, 2010, Mother wrote a letter to District expressing her concern about the 1:1 aides assigned to Student. She stated that Student's aides should be "highly qualified" pursuant to the 2010 Settlement Agreement, and she disputed that Malady was highly qualified. She requested that the training for 1:1 aides take place immediately, as contemplated by the 2010 Settlement Agreement. Around that time, Malady began obtaining California Institute of Behavior Analysis (CIBA) training.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

38. On information and belief, at that time Malady had just started working at Lincoln Middle School. He previously worked as a substitute aide at Hook Middle School for six months. He had a son with multiple disabilities, one of which was autism. Malady had worked with his son on socio-emotional functioning and social skills for 16 years. Malady had no college education or formal training in behavior intervention.

39. During the extended school year (summer semester) of 2010, District assigned Duewing Hardrick as Student's aide. On information and belief, Hardrick had taken classes in autism, some classes in behavior intervention and worked with students with autism for eight years. Hardrick completed a log entry every day recounting Student's assignments and behaviors.

40. On or around August 23, 2010, the regular 2010-2011 school year resumed and Malady resumed his position as Student's 1:1 full time aide in place of Hardrick.

41. Immediately before or after spring break of the 2010-2011 school year (Monday, March 26 to Friday, April 1, 2011), District, acting by and through Hinazumi, Anderson, Mr. Johnson, and or Momon, removed Malady as Student's aide, and re-assigned Dawson to Student. Although Dawson was Student's aide prior to the 2010 Settlement Agreement, he was relieved of that assignment, on information and belief, because the 2010 Settlement Agreement required District to assign a "highly qualified" aide to student.

42. District's aforesaid assignment of Dawson to Student in or about March or April 2011 constitutes a breach its duty of care to Student. Prior to this time, the 2010 Settlement Agreement between District and Plaintiffs required District to assign to Student a highly qualified aide. Dawson was not a highly qualified aide. He had no formal training in autism or any of Student's learning disabilities. Dawson was untrained in assisting students with autism and other severe behavioral or developmental needs. Nevertheless, he was assigned to

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

provide 1:1 aide services to Student. District's breach of duty in this regard was the legal cause of Plaintiff's damages as alleged herein.

43. On information and belief, on or about April 5, 2011, about two school days after Dawson was reassigned to Student, Dawson instructed a campus security guard to search Student for contraband, specifically, a video game, which Dawson believed to be in Student's possession. The security guard refused to do so, advising Dawson that the guard did not have authority to conduct the search.

44. On or about April 6, 2011, Dawson repeated the same acts of April 5th, and once again accused Student of possessing video games. On information and belief, Dawson did not have any reasonable basis to believe Student possessed video games; instead, Dawson had a personal vendetta against Student because Dawson wanted to search Student for video games on the previous day, and Student had refused to submit to the search.

45. Dawson, therefore, contacted Parent and summoned her to Lakeview. On information and belief, Dawson's vendetta against Student and discriminatory treatment was based on disability, color, race and or religion.

46. Parent and Student's grandfather traveled to Lakeview. Upon their arrival, one of District's employees searched Student's book bag, which caused Student to be aggravated by District's depriving him of due process and privacy rights; Student rightfully felt violated and became agitated and hostile.

47. On information and belief, Student's hostility to the search and Dawson's accusatory conduct is a known manifestation of his special needs (as documented in Student's BIP prior to the date of incident, and which District is charged with implementing). Student began hitting his mother and grandfather and yelling obscenities. District called for its two security officers, Robinson and Enriquez, each weighing approximately 200 pounds, to physically restrain hardly 100-pound Student. On information and belief, Robinson put Student in a "chokehold" and, both Robinson and Enriquez "body slammed" Student onto the

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

floor, nearly breaking his arm and badly bruising him. These events transpired in clear view of Parent who was within close proximity to Student. The excessive use of force happened too quickly for Parent to intervene and protect her son.

48. District then called local law enforcement to the scene. The Sheriff's department arrived and subjected Student to an involuntary hold pursuant to California Welfare & Institutions Code § 5150. The ordeal revealed that neither Student's person nor book bag contained any contraband or video games.

49. District, acting by and through Hinazumi, Mr. Johnson, Anderson, and or Momon, then suspended Student for five days based on his behavior on April 6, 2011. When he returned to Lakeview on April 12, 2011, on information and belief, these defendants physically denied Student entry to the school and, thus, deprived of his inalienable right to a public education under the California Constitution, Art. I, § 28(f)(1), and excluded Student from Lakeview solely based on his disability, race, color and or religion, in violation of the Unruh Act, the Rehabilitation Act, and equal protection of the law under the 5th and 14th Amendments of the U.S. Constitution, for which a cause of action accrues under 42 U.S.C. § 1983. At the time District excluded Student from Lakeview, all the aforementioned defendants knew, and later confirmed through a manifestation determination hearing, that that Student's behavior on April 6, 2011 was a manifestation of his disabilities.

50. Parent, acting on Student's behalf, filed a request for a due process hearing against District for various alleged violations of Student's FAPE based on the aforementioned facts. Parent's request for due process was a cross-claim to District's own request for a due process hearing against Parent, on behalf of Student. A consolidated administrative hearing was held over sixteen days of testimony and evidence, in which Parent was *in pro per*, resulting in a joint decision that was issued on March 12, 2012 in State of California, Office of Administrative Hearings

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

(OAH) Decision for Case Nos. 2011080031 and 2011080382. Among other things, the OAH determined that:

> Dawson's lack of training and skills appear to have either created or exacerbated the events of April 2011... Dawson attempted to search Student's backpack, and then called Mother and family to do so. Student escalated into an incident in which he became extremely agitated, verbally violent, shouted obscenities, hit and punched cabinets and the walls with his fists and head, and attempted to hit others, which resulted in District callings security guards and police.

OAH Decision at 82 ¶ 144.

> Overall, the evidence established that District's failure to provide appropriately trained aides as required... caused or escalated the April events.

*Id.* at 82 ¶ 145.

> Although of brief duration, the events of April 2011 were significant both in intensity and in the long-term effect on Student's educational program, resulting as they did in the suspension, the extension of the suspension, the proposed expulsion, and the manifestation determination.

*Id.* at 82 ¶ 146. A true copy of the OAH decision is attached as **EXHIBIT 4**, and incorporated by reference as though it is fully set forth here.

51. During the following 2011-2012 school year, Student continued to receive special education services under his then current IEP, dated June 2, 2011. Parent consented to portions of this IEP, including District's offer of a dedicated 1:1 aide from a non-public agency (NPA). A true copy of Student's June 2, 2011 IEP is attached hereto as **EXHIBIT 5**, and incorporated by reference as though it is full set forth here.

52. But, when Student arrived at the High School campus in August, 2011 to commence 2011-2012 school year, District had not arranged for an NPA aide as required by the latest IEP. Instead, its own aide was provided. At this time, Parent demanded District provide a NPA aide pursuant to the June 2, 2011 IEP.

53. On information and belief, from August to November, 2011, District continued to wrongfully deny Student an NPA aide, based on Student's disability, race, color and or religion. As a precaution to ensure Student's safety, psychological well-being and the safety of others on the campus, Student stayed home and Parent requested Student's class and homework from teachers. Student would complete his assignments, and Parent would return them to Student's teachers. This arrangement persisted until January, 2012, when District, acting by and through Hinazumi, Douglas, Mrs. Johnson and or Momon, ordered Student's teachers to cease sending material home.

54. In this time period, on October 27, 2011, Plaintiffs and Mrs. Johnson attended a Student Attendance Review Board (SARB) hearing to discuss Student's failure to attend school since August 2011. Parent again informed the SARB that District offered, and Parent agreed to, an NPA aide at the June 2, 2011 IEP, as well as a "highly qualified" aide in the 2010 Settlement Agreement, and that District failed to provide one. Parent's position was further vindicated by the April 6, 2011 incident with Dawson, an unqualified aide, which occurred immediately before Student returned to school after summer break. Parent informed District that Student would not attend school until such failure was remedied because of Parent's rightful concerns for Student's safety.

55. The SARB agreed to "provide [an] aide as required by [Student's] current IEP," and the parties mutually executed an agreement called the SARB Agreement, a true copy of which is attached as **EXHIBIT 6** and incorporated by reference as though it is fully set forth here. District refers to the SARB Agreement as a contract entered into with a parent and student to ensure attendance; in

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

exchange for a parent and student's performance of the contract, District agrees to not "order a citation to appear in court". See http://www.vvuhsd.org/page.cfm?p=2950; last accessed March 3, 2013. A true copy of District's representation is attached as **EXHIBIT 7** and incorporated by reference as though fully set forth here.

56. Within 3 hours of execution, the SARB chairwoman, Mrs. Johnson, contacted Parent and advised Parent that District will not perform the SARB Agreement. Parent also received written notice from District's counsel, dated October 31, 2011, stating that District will not provide an aide pursuant to the SARB agreement. A true copy of counsel's letter is attached as **EXHIBIT 8**, and incorporated by reference as though it is fully set forth here.

57. Having realized the violation of many of their constitutional, statutory, common law and contractual rights, Plaintiffs complied with the Torts Claims Act, Government Code §§ 815, *et seq.*, by notifying District of their various claims against District via writings of various dates around October, 2011. (EXHIBIT 1.)

58. By December 9, 2011, District denied all of Plaintiffs' claims. (EXHIBIT 2.)

59. Plaintiffs filed various civil actions alleging related violations of their rights on or about April 11, May 7 and May 29, 2012 in San Bernardino County Superior Court Case Nos. CIV VS 1201743, CIV VS1202149, CIV VS1202510, respectively, all within the time provided by relevant statutes of limitation.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

A. **FIRST CAUSE OF ACTION FOR ASSAULT OF A MINOR**

    a. First Count: Dawson's Assault of Student

        **Student v. District; Dawson; Does 1–100**

60.     Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

61.     A functional analysis assessment (FAA) of Student was conducted around April and May 2010, by CIBA Leafwing, a non-public agency. A written report was provided to District and informed it of Student's needs.

62.     The FAA report identified five target behaviors that were impeding Student's educational progress. They were: (1) running away; (2) teasing, including name-calling, staring, touching and talking about non-preferred topics; (3) refusal or noncompliance; (4) trading of objects or money; and (5) repetitive talk, including talk relating to video games.

63.     Also in May 2012, District's own psychologist, Dr. Hayley Papez, conducted a psycho-educational assessment of Student and prepared a written assessment report dated May 12, 2010. Amongst other things, the report acknowledged that Student could become physically violent when frustrated.

64.     On information and belief, in accordance with the relevant provisions of the IDEA and parallel state laws, Dawson was familiar with Student's IEP, the FAA, and Dr. Papez's assessment in order to serve as Student's 1:1 aide when he was re-assigned to that position in March or April 2011. If he failed to become familiar with these documents, then he was negligent in failing to do so, and District was negligent in ensuring Dawson's familiarity with these documents.

65.     On information and belief, on April 5, 2011, in violation of the then applicable school policy and relevant federal and state law, Dawson began teasing Student, pestering him about possessing a video game without probable cause. On information and belief, Dawson touched Student's pants, and pant pockets in a manner tantamount to a personal frisk. These actions greatly upset Student.

66. On April 6, 2011, Mr. Dawson repeated the same acts of April 5th. On information and belief, Dawson committed these acts and touches with an intention of causing a harmful and offensive contact with Student and in flagrant disregard for Student's behavioral needs. Dawson also threatened to search Student's backpack.

67. Student reasonably believed that he was about to be touched in a harmful or offensive manner, and that Dawson was going to search his backpack without any cause or warrant and, in that way, offend Student's reasonable sense of personal dignity.

68. It reasonably appeared to Student that Dawson was about to carry out his threat of searching Student's person and his backpack. Student anticipated Dawson's impending search of person and property, and Dawson did in fact proceed with a search of Student's backpack.

69. In doing the acts alleged above, Dawson intended to cause or to place Student in apprehension of an offensive search of, and contact with, Student's person.

70. As a result of defendants' acts as alleged above, Student was placed in great apprehension of an offensive search of, and contact with, Student's person.

71. Dawson's unreasonable conduct triggered Student's known target behavior to manifest itself, unnecessarily causing Student psychological and emotional trauma.

72. As a proximate result of the wrongful and malicious acts of District and its employee Dawson, Student was placed in great fear for his physical wellbeing and safety. As a further proximate result, Student sustained physical and emotional injuries, including extreme and severe mental anguish and physical pain. As a result of these injuries, Student incurred, and will continue to incur, medical and related expenses. The full amount of these expenses is not currently known to Student at this time and shall be proven at trial.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

73. Dawson's conduct was a substantial factor in causing the aforementioned injuries to Student.

74. The aforementioned acts of District and its personnel were willful, wanton, malicious and intended to oppress and cause injury to Student, as it was in complete disregard for Student's known behavioral needs. Student is therefore entitled to an award of exemplary damages.

b. Second Count: Security Personnel's Assault of Student

**Student v. District; Robinson; Enriquez; Does 1–100**

75. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

76. On April 6, 2011, when Robinson and Enriquez responded to the reports of Student's hostility, they approached the scene with the intent to cause harmful and offensive contact with Student.

77. When they arrived in the area where Student was located, Student reasonably believed that Robinson and Enriquez were going touch him in a harmful and offensive manner.

78. It reasonably appeared to Student that Robinson and Enriquez were about to carry out the threat of using force against him.

79. Student did not consent to Robinson and Enriquez's conduct.

80. As a result of defendants' acts as alleged above, Student was placed in great apprehension of an offensive search of, and contact with, Student's person.

81. Robinson and Enriquez's unreasonable conduct triggered Student's known target behavior to manifest itself, unnecessarily causing Student psychological and emotional trauma.

82. As a proximate result of the wrongful and malicious acts of District and its employees Robinson and Enriquez, Student was placed in great fear for his physical wellbeing and safety. As a further proximate result, Student sustained physical and emotional injuries, including extreme and severe mental anguish and

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

physical pain. As a result of these injuries, Student incurred, and will continue to incur, medical and related expenses. The full amount of these expenses is not currently known to Student at this time and shall be proven at trial.

83. Robinson and Enriquez's conduct was a substantial factor in causing the aforementioned injuries to Student.

84. The aforementioned acts of District and its personnel were willful, wanton, malicious and intended to oppress and cause injury to Student, as it was in complete disregard for Student's known behavioral needs. Student is, therefore, entitled to an award of exemplary damages.

B. **<u>SECOND CAUSE OF ACTION FOR BATTERY OF A MINOR</u>**

a. <u>First Count: Dawson's Battery of Student</u>

**Student v. District; Dawson; Does 1–100**

85. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

86. Dawson called Parent because he wanted to search Student, and needed Parent to be present during the search. Parent arrived at Lakeview within approximately five minutes of the call to her. When she arrived, Student and Dawson were located in a room. Parent and Student's grandfather entered the room, at which point Dawson escorted all persons to another room. There, Dawson searched Student's backpack, which contained nothing but some Bakugan (a children's television series) cards and papers.

87. On information and belief, Dawson touched Student with the intent of harming or offending him. Student did not consent to being touched by Dawson, and did not consent to the search of his person or backpack by Dawson.

88. A reasonable person in Student's position would have similarly been offended by the same unjustified touching and search.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

89. Student was harmed by Dawson's touching of him and his backpack. He immediately grew agitated, and began to experience severe physical and emotional distress. As a result of his injuries, Student incurred, and will continue to incur, medical and related expenses. The full amount of these expenses is not known to Plaintiffs at this time and shall be proven at trial.

90. Dawson's conduct was a substantial factor in causing the aforementioned injuries to Student.

91. The aforementioned acts of District and its personnel were willful, wanton, malicious and intended to oppress and cause injury to Student, as it was in complete disregard for Student's known behavioral needs. Student is, therefore, entitled to an award of exemplary damages.

b. Second Count: Security Personnel's Battery of Student

**Student v. District; Robinson; Enriquez; Does 1-100**

92. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

93. Robinson and Enriquez touched Student with the intent of harming or offending him, not merely restraining him. Robinson and Enriquez's offensive touching of Student went beyond the scope necessary to restrain Student. Student did not consent to being touched by them, and did not consent to being put in a headlock and body-slammed on the ground.

94. A reasonable person in Student's position would have similarly been offended by the same unjustified touching.

95. Student was harmed by Robinson and Enriquez's excessively forceful touching of him. He grew further agitated, and began to experience severe physical and emotional distress. As a result of his injuries, Student incurred, and will continue to incur, medical and related expenses. The full amount of these expenses is not known to Plaintiffs at this time and shall be proven at trial.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

96. Robinson and Enriquez's battery was a substantial factor in causing the aforementioned injuries to Student.

97. The aforementioned acts of District and its personnel were willful, wanton, malicious and intended to oppress and cause injury to Student, as it was in complete disregard for Student's known behavioral needs. Student is, therefore, entitled to an award of exemplary damages.

C. **THIRD CAUSE OF ACTION FOR EXCESSIVE FORCE WITH A MINOR**

**Student v. District; Robinson; Enriquez; Does 1-100**

98. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

99. Student entitles this cause of action one for battery, or in the alternative excessive force with a minor.

100. After Dawson's unsupported touch and search of Student, Student grew agitated at what he reasonably perceived as a depravation of due process and violation of his privacy.

101. Student, age 13 and weighing no more than 100 pounds began hitting his mother and grandfather, and banging on cabinets in the room.

102. On information and belief, one of District's office assistants called campus security at approximately 8:45 a.m. on April 6, 2011. Student was making threats of violence and to kill people in his presence, but these threats were incredible given he was 13, did not have a weapon and probably could not hurt anybody larger than him. Student was, and still is (at the time of the filing of this complaint) a small sized boy.

103. District's security personnel David Enriquez and Jeff Robinson responded to the call for help. On information and belief, Robinson hooked Student around his neck using Robinson's elbow, tackling Student to the floor and slamming

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

him underneath Robinson's approximate 200-pound body. The grab, slam and subsequent physical restraints used by District's security personnel constituted a use of unreasonable force to restrain and overcome any resistance posed by Student.

104. Neither Parent nor Student, nor any other person authorized to consent on Student's behalf authorized the use of such unreasonable force.

105. Student was physically and emotionally harmed by such excessive use of force.

106. District and its security personnel's use of unreasonable force was a substantial factor in causing physical and emotional injuries to Student.

107. As a result of his injuries, Student incurred, and will continue to incur, medical and related expenses. The full amount of these expenses is not known to Plaintiffs at this time and shall be proven at trial.

108. The aforementioned acts of District and its personnel were willful, wanton, malicious and intended to oppress and cause injury to Student, as it was in complete disregard for Student's known behavioral needs. Student is, therefore, entitled to an award of exemplary damages.

## D. <u>FOURTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

a. <u>First and Second Count: Assigning Dawson to Student, and Dawson's Search</u>

**Student v. District; Hinazumi; Anderson; Mr. Johnson; Dawson; Does 1-100**

109. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

110. Prior to entering into the March 16, 2010 settlement agreement, Parent filed a due process complaint against District, alleging that Student required a "highly qualified" aide. Parent alleged that Student's aide at the time, Dawson, was

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

not "highly qualified." As part of the settlement agreement, District replaced Dawson with Malady.

111. Student had received special education services under an IEP for at least 1 year prior to April 6, 2011. During that year, Student's IEP team replaced his BSP with a BIP. District, Hinazumi, Anderson and Mr. Johnson was thus aware of Student's behavioral needs, including triggering events and how to avoid them, how District personnel should respond to escalating behavior, and Student's particular susceptibility to emotional distress under certain situations, including the invasion of Student's personal space.

112. On or about April 6, 2011, Student was enrolled at Lakeview as an eighth grade student with special needs. His enrollment triggered District's affirmative duties under the Constitution of the State of California, California Education Code, California Code of Regulations, the IDEA and related Code of Federal Regulations.

113. During Dawson's first assignment to Student, prior to the March 16, 2010 settlement agreement, Parent had made known to District, Hinazumi, Anderson and Mr. Johnson that Dawson had a habit of antagonizing Student, was untrained and had developed an adversarial relationship with Student that in no way promoted Student's educational or behavioral development.

114. Immediately prior to the April 6, 2011 incident, District, by and through Hinazumi, Anderson and Mr. Johnson, assigned Malady to another student and reassigned Dawson to Student. District, by and through, Hinazumi, Anderson and or Mr. Johnson ratified the decision to reassign Dawson to Student. This decision was made without Parent's knowledge or consent. At the time of the reassignment, these defendants knew Parent did not believe Dawson was trained or "highly qualified." After all, that belief led to the March 16, 2010 settlement agreement.

115. District's decision, by and through Hinazumi, Anderson and Mr. Johnson, to reassign Dawson to Student after Parent had made this information known to them was patently unreasonable, and outrageous, particularly since Dawson had been previously replaced by Malady as Student's aide after Parent specifically filed a due process complaint against District alleging that Dawson was not a qualified aide.

116. That decision led to Dawson's continued antagonization of Student on April 5 and 6, 2011. On April 6, Dawson's persisted in his unreasonable goal of searching Student for video games, just two school days after Dawson's reassignment to Student.

117. That unreasonable goal was intentional, wanton, malicious and oppressive as he had no reasonable basis to believe that Student was in possession of contraband at the time, and Dawson acted in reckless disregard for Student's known sensitivities and needs caused by his disabilities, and contrary to Dawson's statutory obligations to be aware of Student's IEP, including his BIP.

118. On information and belief, Dawson wanted to conduct the search of Student because he was unsuccessful in doing so on the day prior and could not obtain District's security personnel to do the search. Yet, Dawson pressed on by calling Parent to the scene, and proceeding with the search in Parent's presence, when Dawson knew he was not trained nor qualified to respond to or address a child with Student's needs in the search of video games.

119. Parent, appearing *in pro per*, presented District's conduct in reassigning to Dawson to Student, and Dawson's April 6 conduct, to an administrative law judge in a hearing over the course of sixteen days, using testimony and evidence. The administrative law judge determined Dawson to have been the "cause" of the April 6, 2011 event, which was "significant both in intensity and in the long-term effect on Student's educational program, resulting as they did

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

in the suspension, the extension of the suspension, the proposed expulsion, and the manifestation determination." (EXHIBIT 4, Decision at 82 ¶ 142.)

120. Dawson's conduct, by and through Dawson, was plainly outrageous in that his repeated accusations of Student was nothing but harassing in nature, based on no evidence whatsoever, contrary to Dawson's statutory obligations and against Student's IEP, and exceeding all bounds of that usually tolerated in a civilized community.

121. District's conduct, by and through Hinazumi, Anderson and Mr. Johnson, was intentional, wanton, malicious and oppressive as it had no basis to remove Malady as Student's aide, and more particularly, to re-assign Dawson to Student.

122. Moreover, these defendants' acted in reckless disregard for Student's known sensitivities and needs caused by his disabilities because they were aware that Dawson did not have the formal training necessary to supervise a child with Student's needs, but reassigned Dawson to Student anyway.

123. District, by and through Hinazumi, Anderson and Mr. Johnson, continued to act in reckless disregard for Student's known sensitivities and needs because these defendants intentionally failed to appropriately train and or supervise Dawson, and to intervene on the day of the incident, when Dawson insisted on conducting a search of Student and his backpack in the main administrative office at Lakeview.

124. District, by and through Hinazumi, Anderson and Mr. Johnson, condoned, confirmed and ratified Dawson's acts by reassigning Dawson to Student, and by its failure to impede Dawson's conduct on the day of the incident, because these defendants knew that Dawson did not have the proper training to act as Student's aide given Student's then BIP.

125. The conduct of District, by and through Hinazumi, Anderson, Mr. Johnson and Dawson was outrageous, willful, wanton, malicious and intended to

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

oppress and cause injury to Student. It was a substantial factor in causing severe humiliation and emotional distress to Student.

126. Student is, therefore, entitled to compensatory damages for the severe emotional distress he sustained, and to an award of exemplary and punitive damage against Hinuzami, Anderson, Mr. Johnson and Dawson.

b. Third Count: Security Personnel's Assault and Battery

**Plaintiffs v. District; Robinson; Enriquez; Does 1-100**

127. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

128. Each of District's security personnel, Robinson and Enriquez, weighed about 200 pounds, and Student weighed less than 100 pounds. They put Student in a headlock and slammed him onto the ground with the full weight of their bodies. Robinson and Enriquez's use of excessive force on April 6, 2011, as alleged above, was outrageous.

129. On information and belief, Robinson and Enriquez intended to cause Student and Parent emotional distress, or else they acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress, knowing that Plaintiffs were present when their outrageous conduct occurred.

130. Plaintiffs suffered humiliation, mental anguish and severe emotional and physical distress as a result of these defendants' deliberate acts.

131. These defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

132. The aforementioned acts of Robinson and Enriquez were willful, wanton, malicious and intended to oppress and cause injury to Plaintiffs. Plaintiffs are, therefore, entitled to an award of exemplary and punitive damages.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

c. Fourth and Fifth Counts: Assigning Dawson to Student and Dawson's Search

**Parent v. District; Hinazumi; Anderson; Mr. Johnson; Dawson; Does 1-100**

133. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

134. In further reckless disregard to Parent, District, by and through Hinazumi, Anderson and Mr. Johnson, was aware that its reassignment of Dawson to Student was in direct conflict with the March 16, 2010 settlement agreement, which was the result of Parent's filing of a due process complaint against District and alleging that Dawson was not qualified. District's conduct was thus outrageous and offensive.

135. On information and belief, District's conduct, by and through Hinazumi, Anderson and Mr. Johnson, was intentional and outrageous because it was aware, from various complaints and lawsuits it had received regarding its security personnel, that they were known to be overly aggressive and to make use of unreasonable force, especially when interacting with special needs students.

136. District called its security personnel to the scene after Dawson outrageously and deliberately acted in a manner that caused Student's disabilities to manifest, well knowing that the security personnel would use a substantial amount of force against a student with special needs, which given Student's size and stature, would likely be excessive and unreasonable.

137. On information and belief, District was also aware that its security personnel were not familiar with Student's special needs, nor appropriately trained or supervised on how to respond to Student's needs.

138. On or about April 6, 2011, Parent was telephoned by Dawson because Student refused to be searched. Upon her arrival at the campus, Dawson and or other District staff insisted that Student be searched, even though Student's

behavior predictably escalated. Defendants' unnecessarily and improperly aggravated Student in Parent's presence.

139. As a result of Hinazumi, Anderson, Mr. Johnson and Dawson's outrageous conduct, as alleged, Student was physically battered by Robinson and Enriquez, and then held by law enforcement for no less than three days, all of which caused Parent damages.

140. Parent suffered humiliation, mental anguish and severe emotional and physical distress as a result of these defendants' deliberate acts. The evening of April 6, 2011 was Parent's first long-term separation from Student, and its occurrence in this manner caused her great grief.

141. These defendants' conduct as alleged herein was a substantial factor in causing Parent to incur severe emotional distress. Parent incurred, and will continue to incur, medical and related expenses. The full amount of these expenses is not known to Student at this time, and shall be proven at trial.

142. The aforementioned acts of Hinazumi, Anderson, Mr. Johnson and Dawson were willful, wanton, malicious and intended to oppress and cause injury to Parent. Parent is, therefore, entitled to an award of exemplary and punitive damages.

E. **FIFTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

a. First Count: District Assignment of Dawson to Student

**Student v. District; Hinazumi; Anderson; Mr. Johnson; Does 1-100**

143. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

144. District owed a duty of care in supervising and educating Student, and to discharge that duty of care in light of Student's special needs.

145. When District, acting by and through Hinazumi, Anderson, and Mr. Johnson, reassigned Dawson as Student's aide in the days leading up to April 6,

THE OBAGI LAW GROUP
433 North Camden Drive, Suite 400
Beverly Hills, California 90210

MILLER WASHINGTON & KIM, LLP
725 Washington Street, Suite 300
Oakland, California 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

2011, it breached its duty of care to Student. Dawson was not trained in aiding autistic students, or students with needs, triggers and BIPs like Student's. Dawson also developed an antagonistic relationship with Student that, in the past, had aggravated and incited rather than abated manifestations of Student's disabilities.

146. When Dawson harassed Student for two days straight about possessing a video game with no cause at all, including summoning Parent to school for the purpose of looking for a video game, he breached his and District's duty of care to Student. When Dawson continued to conduct the search in light of Student's manifestation of his needs, Dawson further breached the duty of care owed to Student.

147. District also breached its duty of care by not appropriately supervising Dawson during his two days of antagonizing and harassing Student, and by failing to appropriately train and or supervise its security personnel.

148. Student suffered physical injuries and severe emotional distress on April 6, 2011.

149. Dawson and District's aforementioned negligence was a substantial factor in causing Student's serious emotional distress in the form of suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and/or shame.

150. Student incurred, and will continue to incur medical and related expenses arising from the serious emotional distress he sustained. The full amount of these expenses is not known to Student at this time, and shall be proven at trial.

b. Second Count: District Assignment of Dawson to Student

**Parent v. District; Hinazumi; Anderson; Mr. Johnson; Does 1-100**

151. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

152. District, through its employees who were at all times acting within the scope of their employment, breached a duty of care that it owed to Parent by

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

assigning Dawson as Student's aide given Dawson's lack of training in the area of students with special needs and given the antagonistic relationship that Dawson and Student had when Dawson was first assigned to Dawson. District was further aware that Parent did not believe Dawson was qualified to act as Student's aide, as Parent filed a due process complaint to which District executed the 2010 Settlement Agreement.

153. On information and belief, District, through its employees who were at all times acting within the scope of their employment, breached a duty of care owed to Parent by also continuing to employ security personnel that were known to have proclivities to use unreasonable force, by employing security personnel who were improperly trained, if at all, to restrain a student with special needs and by summoning security personnel to the scene were Student had begun acting out as a manifestation of his disabilities.

154. The breach of duty of care by District personnel proximately caused physical injury to Student.

155. Parent, Student's mother, was present at Lakeview, the scene of the injury, and was contemporaneously aware that Student was being injured.

156. Parent suffered serious emotional distress, including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

157. District's conduct, as pleaded, was a substantial factor in causing Parent's serious emotional distress.

c. Third Count: Security Personnel's Assault and Battery

**Student v. District; Robinson; Enriquez; Does 1-100**

158. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

159. District, by and through Robinson and Enriquez, owed Student a duty of care to act reasonably in their response to the incident involving Student on

April 6, 2011. District, by and through Robinson and Enriquez, breached its duty by using more physical force than necessary to deescalate or otherwise restrain Student when Robinson and Enriquez physically placed Student in a head lock before slamming him into the ground and physically restraining him.

160. Student suffered humiliation, mental anguish and severe emotional and physical distress as a result of these defendants' deliberate acts.

161. These defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

162. As a result of these injuries, Student incurred, and will continue to incur, medical and related expenses. The full amount of these expenses is not currently known to Student at this time and shall be proven at trial.

F. **SIXTH CAUSE OF ACTION FOR NEGLIGENT SUPERVISION**

**Plaintiffs v. District; Hinazumi; Anderson; Mr. Johnson; Momon; Does 1–100**

163. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

164. Plaintiffs are informed and believe and thereon allege that, in doing the acts as heretofore alleged, District knew, by and through Hinazumi, Anderson, Mr. Johnson and or Momon, or in the exercise of reasonable diligence should have known, that Dawson was neither qualified nor able to act as Student's aide, and specifically, respond appropriately to Student's behavioral needs, and that an undue risk to Plaintiffs would exist because of this lack of ability unless District adequately trained and or supervised Dawson in the exercise of the tasks of his employment. District was on notice of Dawson's lack of abilities because Parent filed a due process complaint on the same allegation, and District assigned a "highly qualified" aide in Dawson's place.

165. Notwithstanding the knowledge that Dawson was neither qualified nor able to appropriately address Student's educational and behavioral needs, District,

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

by and through Hinazumi, Anderson, Mr. Johnson and or Momon, did not adequately train and or supervise Dawson in his performance of his role as Student's aide.

166. District, by and through Hinazumi, Anderson, Mr. Johnson and or Momon, also knew or should have known that its security personnel were neither qualified nor able to respond to situations involving the manifestation of a special needs student's disabilities. District has been sued before and, on information and belief, held liable for breaches of duty of care and intentional torts committed by its security personnel.

167. On information and belief, by continuing to employ security personnel that were known to have proclivities to use unreasonable force, employing security personnel who were improperly trained, if at all, to restrain a student with special needs and summoning its security personnel to the scene where Student's disabilities were manifesting, District did not adequately supervise its security personnel in its role as security for the Lakeview special needs student population.

168. The failure of District to adequately train and supervise Dawson and its security personnel was a substantial factor or legal cause in bringing about Plaintiffs' injuries.

169. As a result of these injuries, Plaintiffs incurred, and will continue to incur, medical, other damages and expenses. The full amount of these damages is not currently known to Student at this time and shall be proven at trial.

## G. SEVENTH CAUSE OF ACTION FOR NEGLIGENCE

### a. First Count: Assigning Dawson as Student's Aide

**Student v. District; Hinazumi; Anderson; Mr. Johnson; Does 1–100**

170. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

171. District, by and through Hinazumi, Anderson, and or Mr. Johnson, owed Student a duty of care when it accepted receipt of federal funds and undertook the responsibility to educate students with special needs, including Student.

172. District was obligated to provide Student with an appropriately trained aide. District, by and through Hinazumi, Anderson, and or Mr. Johnson, breached this duty by assigning Dawson to Student as his aide. On information and belief, District, by and through Hinazumi, Anderson, and or Mr. Johnson, ratified or condoned Dawson's re-assignment to Student immediately prior to the April 6, 2011 incident.

173. Dawson's assignment as Student's aide was a substantial factor in causing Student's damages.

174. As a result of that breach, Student incurred damages, and will continue to incur medical and related expenses including, but not limited to, those arising from the physical and emotional injuries he sustained on and after April 6, 2011. The full amount of these expenses is not known to Student at this time, and shall be proven at trial.

b. <u>Second Count: Dawson's Misconduct</u>

**Student v. District; Dawson; Does 1–100**

175. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

176. As alleged above, Dawson owed a duty of care to Student as a student under Dawson's supervision at school, and he was entrusted with the responsibility of tutoring and aiding Student in his education. As the aide to a special needs student, Dawson's duties included refraining from levying false accusations against Student without any cause, engaging in the type of behavior that would elicit from Student a manifestation of his disabilities that would impede his ability, and the ability of fellow students, to receive an education and absorb the

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND CALIFORNIA 94607

materials they were being taught, and repeatedly threatening to search Student, and ultimately battering Student's body.

177. Nevertheless, almost immediately upon his reassignment to Student, Dawson began harassing Student for two days straight about possessing a video game with no cause at all. Rather than focusing on Student's educational needs, Dawson threatened Student with a search of his person and property unless Student revealed a video game he did not possess. In breach of his duties as an aide, Dawson caused Student to be distracted from learning, and instead obsessed with the imminent depravation of due process and privacy that Dawson threatened.

178. Also in violation of his duties as an aide to Student, Dawson summoned Parent to come to Lakeview to supervise a search of Student, rather than calm Student down and redirect Student's attention on academics rather than his video game hunt.

179. Dawson's conduct was a substantial factor in causing Student's damages.

180. As a result of that breach, Student incurred damages, and will continue to incur medical and related expenses including, but not limited to, those arising from the physical and emotional injuries he sustained on and after April 6, 2011. The full amount of these expenses is not known to Student at this time, and shall be proven at trial.

c. Third Count: Security Personnel's Misconduct

**Student v. District; Robinson; Enriquez; Does 1–100**

181. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

182. District, by and through its security personnel, Robinson and Enriquez, owed Student a duty to exercise due care, and to use no more force than necessary in restraining Student when he became agitated, and began yelling obscenities and threats.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND CALIFORNIA 94607

183. District, by and through its security personnel, violated its duty of care to Student when security guards put Student in a headlock, tackled him and restrained him with the fervor that they did. Security used unreasonable force given Student's small size and stature as compared to each of the 200-pound security guards who were summoned to restrain Student, and who used their combined full body weight and a forceful slam to restrain student.

184. Student was hurt physically on April 6, 2011 and sustained serious physical injury and emotional distress.

185. District's security personnel's breaches of duties were a substantial factor in causing Student's damages. Student incurred, and will continue to incur medical and related expenses arising from the physical injuries and serious emotional distress he sustained as a result of the aforementioned negligence. The full amount of these expenses is not known at this time and will be proven at trial.

d. Fourth Count: Negligent Hiring, Training and Supervising of Dawson and Security Personnel

**Student v. District; Momon; Hinazumi; Mr. Johnson; Anderson; Does 1–100**

186. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

187. District, by and through Momon, Hinazumi; Mr. Johnson, and or Anderson, owed all of its special education students, including Student, a duty to exercise due care in hiring, training and supervising security personnel and Dawson at Lakeview.

188. On information and belief, in doing the acts as heretofore alleged, District knew, or in the exercise of reasonable diligence should have known, that its security personnel nor Dawson were qualified nor able to competently protect both the campus and the well-being of its special needs student population, and that an

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

undue risk to persons such as Student would exist because of this lack of background diligence, training and supervision.

189. Notwithstanding the knowledge that Dawson was neither qualified nor able to competently aide Student, or that its security personnel was neither qualified nor able to competently protect both the campus and the well-being of its special needs student population, District, by and through Momon, Hinazumi, Mr. Johnson, and or Anderson did not adequately perform background checks, train or supervise Dawson and security personnel at Lakeview.

190. District's failure, by and through Momon, Hinazumi, Mr. Johnson and or Anderson, to exercise due care as specified was a substantial factor in causing the Student's damages. Student incurred, and will continue to incur medical and related expenses arising from the physical injuries and serious emotional distress he sustained as a result of the aforementioned negligence. The full amount of these expenses is not known at this time and will be proven at trial.

e. Fifth Count: Failure to Keep Lakeview Middle School Open to Disabled Students

**Student v. District; Momon; Mr. Johnson; Does 1–100**

191. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

192. District, by and through Momon and or Mr. Johnson, owed a duty of care to its student population, including Student, to keep Lakeview equally open and accessible for each student to obtain an education there, regardless of disability, color, race and or religion.

193. District, by and through the aforementioned defendants, breached the duty of care it owed to Student to keep Lakeview equally open and accessible during school hours, when it denied him entry on April 12, 2011.

194. Defendants' failure to keep Lakeview equally open and accessible to Student was a substantial factor in causing Student's damages. Student incurred,

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

and will continue to incur medical and related expenses arising from the serious emotional distress he sustained as a result of the aforementioned negligence. The full amount of these expenses is not known at this time and will be proven at trial.

f. Sixth Count: Failure to Keep High School Open to Disabled Students

**Student v. District; Momon; Hinazumi; Douglas; Does 1–100**

195. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

196. On or about August 2011, District, by and through Momon, Hinazumi and or Douglas, owed Student a duty to provide him a NPA aide pursuant to his then current IEP.

197. District breached this duty providing its own aide, and not an NPA, to Student upon the start of the 2011-2012 school year.

198. Further, On or about October 27, 2011, District, by and through its SARB and Senior Director of Child Welfare and Attendance, Patricia Johnson, voluntarily assumed a duty to Parent and Student to provide a 1:1 NPA aide as required by Student's then current IEP.

199. At or around the same time, District, by and through Mrs. Johnson, breached its voluntarily assumed duty to Student by failing to provide Student with an NPA 1:1 aide.

200. District's breach of this duty was a substantial factor in emotional, physical, educational and earning capacity damages it caused to Student, because Student was not able to attend school without an aide. Student incurred, and will continue to incur medical and related expenses arising from injuries he sustained as a result of the aforementioned negligence. The full amount of these expenses is not known at this time and will be proven at trial.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

H. **EIGHTH CAUSE OF ACTION FOR VIOLATION OF UNRUH CIVIL RIGHTS ACT**

a. First Count: Assigning Untrained Aide to Student

**Student v. District; Hinazumi; Anderson; Mr. Johnson; Does 1–100**

201. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

202. The California Unruh Civil Rights Act, Civil Code Sections 51 and 52, provides that businesses cannot discriminate based on sex, **race**, **color**, **religion**, ancestry, national origin, **disability**, medical condition, marital status, or sexual orientation.

203. Public schools, like Lakeview Middle School and the Victor Valley High School, are businesses under the Unruh Act, for which District is liable.

204. Civil Code § 52 provides:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

205. Civil Code Section 54.3, provides:

> Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2. "Interfere," for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person.

206.    By assigning Student an aide who was untrained and unfamiliar with Student's unique needs and disabilities, District, by and through Hinazumi, Anderson and or Mr. Johnson, discriminated against Student, on information and belief, based on his disability, race, color and or religion, resulting in depravation of due process and equal protection.

207.    Defendants' aforementioned discrimination was a substantial factor in causing Student physical and psychological injuries, and also interfered with Student's ability to access the services rendered by Victor Valley High in violation of Civil Code § 54.

208.    Student incurred, and will continue to incur medical and related expenses arising from injuries he sustained as a result of the aforementioned discrimination. The full amount of these expenses is not known at this time and will be proven at trial.   Student is also entitled to statutorily defined damages, attorney's fees and costs pursuant to Sections 52 and 54.3.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

b. Second Count: Targeting Student for Search Lacking Reasonable Suspicion, Probable Cause or Warrant

**Student v. District; Dawson; Does 1–100**

209. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

210. District, by and through Dawson, wrongfully harassed Student and repeatedly threatened him with a search of his person and backpack for video games. Eventually, District conducted a search of Student's backpack that was not preceded by any reasonable suspicion or probable cause. On information and belief, in so doing, these defendants targeted and discriminated against Student based on disability, race, color and or religion, resulting in depravation of due process and equal protection under the law.

211. Defendants' aforementioned discrimination was a substantial factor in causing Student physical and psychological injuries, and also interfered with Student's ability to access the services rendered by Lakeview in violation of Civil Code § 54.

212. Student incurred, and will continue to incur medical and related expenses arising from injuries he sustained as a result of the aforementioned discrimination. The full amount of these expenses is not known at this time and will be proven at trial. Student is also entitled to statutorily defined damages, attorney's fees and costs pursuant to Sections 52 and 54.3.

c. Third Count: Targeting Student for Assault, Battery and or Excessive Force

**Student v. District; Dawson; Robinson; Enriquez; Does 1–100**

213. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

214. District, by and through Dawson, Robinson, and Enriquez, on April 6, 2011, targeted Student who was manifesting the most severe of his disabilities

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

(which District and its agents caused with knowledge thereof) for assault, battery and or excessive force that was not commensurate with the threat of harm posed by the then less than 100 pound, 13 year old Student. In so doing, these defendants targeted and discriminated against Student based on disability, race, color and or religion, resulting in depravation of due process and equal protection under the law.

215. Defendants' aforementioned discrimination was a substantial factor in causing Student physical and psychological injuries, and also interfered with Student's ability to access the services rendered by Lakeview in violation of Civil Code § 54.

216. Student incurred, and will continue to incur medical and related expenses arising from injuries he sustained as a result of the aforementioned discrimination. The full amount of these expenses is not known at this time and will be proven at trial. Student is also entitled to statutorily defined damages, attorney's fees and costs pursuant to Sections 52 and 54.3.

d. Fourth Count: Intentionally Failing to Provide Student a Highly Qualified Aide in Breach of District's Contractual Obligations

**Student v. District; Hinazumi; Anderson; Mrs. Johnson; Does 1–100**

217. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

218. In late March or early April 2011, and once more in August, 2011, District, by and through Hinazumi, Anderson and or Mr. Johnson, targeted Student for depravation of a highly qualified aide as required by the 2010 Settlement Agreement by re-assigning Dawson to Student, and by failing to provide a NPA aide as promised by the 2011 SARB Agreement. In so doing, these defendants targeted and discriminated against Student based on disability, race, color and or religion, resulting in depravation of due process and equal protection under the law.

219. Defendants' aforementioned discrimination was a substantial factor in causing Student physical and psychological injuries, and also interfered with Student's ability to access the services rendered by Lakeview in violation of Civil Code § 54.

220. Student incurred, and will continue to incur medical and related expenses arising from injuries he sustained as a result of the aforementioned discrimination. The full amount of these expenses is not known at this time and will be proven at trial. Student is also entitled to statutorily defined damages, attorney's fees and costs pursuant to Sections 52 and 54.3.

e. Fifth Count: Denying Student Entry to Lakeview Middle School

**Student v. District; Hinazumi; Anderson; Mr. Johnson; Does 1–100**

221. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

222. District, by and through Hinazumi, Anderson, Mr. Johnson, suspended Student for five days based on his behavior on April 6, 2011. When he returned to Lakeview on April 12, 2011, on information and belief, these defendants physically denied Student entry to the school and, thus, targeted and discriminated against Student based on disability, race, color and or religion, resulting in depravation of due process and equal protection under the law.

223. Defendants' aforementioned discrimination was a substantial factor in causing Student physical and psychological injuries, and also interfered with Student's ability to access the services rendered by Lakeview in violation of Civil Code § 54.

224. Student incurred, and will continue to incur medical and related expenses arising from injuries he sustained as a result of the aforementioned discrimination. The full amount of these expenses is not known at this time and will be proven at trial. Student is also entitled to statutorily defined damages, attorney's fees and costs pursuant to Sections 52 and 54.3.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

f. Sixth Count: Denying Student Access to Victor Valley High School

**Student v. District; Hinazumi; Douglas; Does 1–100**

225. Student hereby refers to and incorporates each and every allegation set forth by the preceding paragraphs.

226. In August 2011, Student was set to enter the ninth Grade, and was qualified to receive a specialized education at Victor Valley High School.

227. At all times prior to August 2011, District and its agents were obligated, pursuant to Student's individualized services under the IDEA, to provide Student with a highly qualified or NPA 1:1 aide. Non-public agency and highly qualified aides are much more trained than their counterpart nominally trained district, or public aides. The former typically possess a master's degree, or at least college degree in educating students with special needs, and also have great experience interacting with students with special needs, by virtue of their designation as non-public agency aides. The well of experience possessed by non-public agency aides provides them with the insight into teaching and interacting with special needs students, especially to overcome their specific learning disabilities. Non-public agency aides are much less likely than a district or public aide to engage in the type of behavior that causes an unprecedented manifestation of a special needs student's most severe disabilities, as Dawson did on April 6, 2011 with Student.

228. On information and belief, in or about August 2011, District, by and through Hinazumi and Douglas, were aware that Parent intended to bring Student to Victor Valley High to commence ninth grade. These defendants were also aware of their obligation to provide Student with a highly qualified or NPA 1:1 aide.

229. Well knowing their obligations, these defendants denied Student an NPA 1:1 aide when he arrived at school to commence the 2011-2012 school year, by assigning District's own aide to Student.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

230. On information and belief, these defendants' aforementioned discrimination was intended to make the campus environment unsafe for Student and, therefore, Student was targeted and discriminated against based on disability, race, color and or religion, resulting in depravation of due process and equal protection under the law.

231. Defendants' aforementioned discrimination was a substantial factor in causing Student physical and psychological injuries, and also interfered with Student's ability to access the services rendered by Lakeview in violation of Civil Code § 54.

232. Student incurred, and will continue to incur medical and related expenses arising from injuries he sustained as a result of the aforementioned discrimination. The full amount of these expenses is not known at this time and will be proven at trial. Student is also entitled to statutorily defined damages, attorney's fees and costs pursuant to Sections 52 and 54.3.

g. <u>Seventh Count: Other Incidents of Discrimination Identified by the California Department of Education</u>

**Student v. District; Hinazumi; Anderson; Mr. Johnson; Douglas; Does 1–100**

233. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

234. At various times in 2011, Parent complained of depravation of due process through the Office of Administrative Hearings set up by IDEA. In a letter dated June 5, 2012, the California Department of Education (CDE) issued a Notice of Required Corrective Actions to District, by and through Momon, regarding the various violations of state and federal law it had committed with regard to Student.

235. On information and belief, for each below-listed violation wherein the CDE required corrective action, Student was targeted and discriminated against

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

based on disability, race, color and or religion, resulting in depravation of due process and equal protection under the law.

i. Failure to provide written assessment report with required content;

ii. Failure to use a variety of assessment tools and strategies to gather relevant functional and developmental information about child to assist in determining eligibility for services;

iii. Failure to adhere to all requirements for developing and monitoring and behavioral intervention plans (BIPS) and include the behavior intervention case manager and educational team;

iv. Failure to adhere to all requirements for developing and monitoring behavioral intervention plans and include the behavioral intervention case manager and educational team;

v. Failure to conduct an individualized educational program (IEP) team meeting within two days following a behavioral emergency to review behavioral emergency report and determine the necessity for a functional analysis assessment (FAA) and BIP following a behavioral emergency report;

vi. Failure to conduct a functional analysis assessment following 10 days of suspension;

vii. Failure to conduct a manifestation determination and review of placement before changing a pupil's placement pending suspension and/or expulsion procedures;

viii. Failure to provide credentialed substitute teachers;

ix. Failure to ensure that [Student has] free appropriate public education (FAPE) available that emphasizes special education and related services designed to meet their unique needs.

A true and correct copy of the CDE's letter is attached as **<u>EXHIBIT 9</u>** and incorporated by reference as though it is fully set forth here.

236. Defendants' aforementioned discrimination was a substantial factor in causing Student physical and psychological injuries, and also interfered with Student's ability to access the services rendered by Lakeview and Victor Valley High in violation of Civil Code § 54.

237. Student incurred, and will continue to incur medical and related expenses arising from injuries he sustained as a result of the aforementioned discrimination. The full amount of these expenses is not known at this time and will be proven at trial. Student is also entitled to statutorily defined damages, attorney's fees and costs pursuant to Sections 52 and 54.3.

## I. NINTH CAUSE OF ACTION FOR BREACH OF 2010 SETTLEMENT AGREEMENT

**Plaintiffs v. District; Does 1–100**

238. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

239. On or about March 16, 2010, the Parent and District entered into the written 2010 Settlement Agreement. (EXHIBIT 3). The 2010 Settlement Agreement provides, "District will provide Student with a Special Circumstances Instructional Assistant ("SCIA") who [is]… "highly qualified"…" The 2010 Settlement Agreement also provides that the agreement "is enforceable in any State Court of competent jurisdiction or in a district court of the United States."

240. Plaintiffs have duly performed all conditions, covenants and promises required to be performed by them under the 2010 Settlement Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed or excused by acts or omissions of Defendants, and the District's performance in the form of providing a highly qualified SCIA was not excused.

241. Student is a third party beneficiary expressly contemplated by the 2010 Settlement Agreement.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

242. District breached its obligation to provide a highly qualified SCIA when it assigned Dawson to Student in March or April 2011, after removing Malady from that assignment.

243. As a proximate cause of District's breach, Plaintiffs have sustained damages, including Parent's need to privately fund Student's therapy and educational services outside of District.

244. District's breach of contract was the legal cause of Plaintiffs damages, as alleged above. Plaintiffs incurred, and will continue to incur damages arising from District's breach of contract. The full amount of these damages is not known to Plaintiffs at this time, and shall be proven at trial.

## J. TENTH CAUSE OF ACTION FOR BREACH OF 2011 SARB AGREEMENT

**Plaintiffs v. District; Mrs. Johnson; Does 1–100**

245. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

246. On or about October 27, 2011, the Parent, Student and Mrs. Johnson, acting in her capacity as District's Senior Director of Child Welfare and Attendance and SARB chairwoman, and under the authority and employ of District, entered into a written settlement agreement regarding student's attendance. The agreement was entitled, the Student Attendance Review Board Agreement. Of importance, is that District agreed to provide Student with an aide as "required by [Student's] current IEP."

247. On or about October 27, 2011, within hours of execution of the agreement, District, by and through Mrs. Johnson, telephoned Parent and gave notice that District would not perform by providing a 1:1 NPA aide. Then, Parent received a written letter, dated October 31, 2011, from District's counsel,

"memorializing" Mrs. Johnson's telephone conversation with Parent. District's repudiation has not been retracted.

248. At the time Plaintiffs received District's repudiation, Plaintiffs had performed all of the conditions and things on their part to be done and performed, and District and Mrs. Johnson's performance was not excused.

249. As a proximate result of District's breach of contract, Parent was forced to withdraw Student from District because leaving him there would have created an unsafe environment for him and fellow students. Parent subsequently enrolled Student in an online credentialed program until he was able to be placed in a private sectarian school in May, 2012. The full amount of these expenses is not known to Plaintiffs at this time and shall be proven at trial.

250. As a proximate cause of District's breach, Plaintiffs have sustained damages, including Parent's need to privately fund Student's therapy and educational services outside of District.

251. District's breach of contract was the legal cause of Plaintiffs damages, as alleged above. Plaintiffs incurred, and will continue to incur damages arising from District's breach of contract. The full amount of these damages is not known to Plaintiffs at this time, and shall be proven at trial.

## K. ELEVENTH CAUSE OF ACTION FOR FRAUD UNDER 2011 SARB AGREEMENT

**Plaintiffs v. District; Mrs. Johnson; Does 1–100**

252. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

253. On information and belief, on or about October 27, 2011, District was aware of the status of Student's then pending due process complaint, but nevertheless voluntarily executed what it expressly defines as a contract with Plaintiffs. District, by and through its SARB and Mrs. Johnson, promised Plaintiffs

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

that Student would be provided an aide pursuant to the terms of Student's then current IEP. That IEP called for a NPA 1:1 aide. On information and belief, District, by and through Mrs. Johnson, also promised, or represented to, Parent, that if Parent entered into the SARB Agreement, Parent would not be "referred" for criminal truancy.

254. On information and belief, these defendants' promises were false, and they knew them to be false at the time they made them. Defendants have a habit of promising Parent and Student services that they do not ultimately provide.

255. On information and belief, at the time these defendants made these promises to Plaintiffs, they did not intend to provide Student with the aide required by Student's then current IEP, nor did they intend to forego prosecuting Parent for truancy. These defendants intentionally falsely represented that District would provide such an aide to Student and forego prosecuting Parent to induce Parent to sign that she would cooperate with school officials, ensure Student attended school daily, notify school when Student was absent, and assume many more obligations stated in the agreement.

256. Parent did rely on these defendants' false representations, and assumed the obligations set forth in the SARB Agreement by signing the SARB Agreement, and assumed the reasonable belief that Student's attendance issues were resolved.

257. Plaintiffs sustained damages when the truth was revealed, and these defendants communicated that it would *not* be providing a NPA 1:1 aide, or any aide to Student for that matter. Parent also sustained damages when Mrs. Johnson referred Parent for criminal prosecution for truancy. Plaintiffs sustained damages emotionally and financially. They had to privately fund substitute education services, pay fees and fines in the truancy case, and sustained other related costs.

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

258. District's fraud, by and through its SARB and Mrs. Johnson, was a substantial factor in causing Plaintiffs' damages. The full amount of these damages is not known to Plaintiffs at this time and shall be proven at trial.

259. Mrs. Johnson's conduct as alleged herein was willful, wanton, malicious and intended to oppress and cause injury to Student in reckless disregard for Student's rights.

260. As a result of these frauds, an award of compensatory damages is warranted against District and Mrs. Johnson. In addition, an award of exemplary and punitive damages is warranted against District and Mrs. Johnson.

**L. <u>TWELFTH CAUSE OF ACTION FOR VIOLATION OF THE REHABILITATION ACT (29 U.S.C. § 794)</u>**

a. <u>First Count: Denial of Entry to School on April 12, 2011</u>

**Student v. District; Momon; Hinazumi; Anderson; Mr. Johnson; Does 1–100**

261. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

262. On information and belief, District receives Federal financial assistance for its programs, services and activities.

263. On April 6, 2011, District, by and through Momon, Hinazumi, Anderson, and or Mr. Johnson, suspended Student from Lakeview until April 12, 2011. District then sought to expel Student. District determined that Student could not be expelled because his behavior was a manifestation of his disabilities.

264. On April 12, 2011, Parent brought Student to Lakeview to resume obtaining his education.

265. At that time, however, District, by and through these defendants, denied Student access to the Lakeview campus. Student was told that his

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND CALIFORNIA 94607

suspension had been extended, on information and belief, because of the manifestation of his disabilities on April 6, 2011.

266. District's refusal to grant Student access to Lakeview on April 12, 2011 constituted discrimination against, and an exclusion of, a qualified individual with a disability, solely by reason of his disability, from the benefits of Lakeview's Federally-funded programs.

267. These defendants' discrimination against and exclusion of Student was a substantial factor in causing Student damages. As a direct and proximate result of the aforementioned acts, Student has suffered and continues to suffer medical expenses, personal injuries and damages in a sum according to proof at trial.

268. Pursuant Sections 794 *et seq.*, Student is entitled to monetary damages, and should be awarded attorneys' fees and costs incurred in bringing this action.

b. Second Count: Denial of Entry to School in August, 2011

**Student v. District; Momon; Hinazumi; Douglas; Does 1–100**

269. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

270. In August 2011, Student was set to enter the ninth grade, and was qualified to receive a specialized education at Victor Valley High.

271. At all times prior to August 2011, District and its agents were obligated, pursuant to Student's individualized services under the IDEA, to provide Student with a highly qualified or NPA 1:1 aide. Non-public agency and highly qualified aides are much more trained than their counterpart nominally trained district, or public aides. The former typically possess a master's degree, or at least college degree in educating students with special needs, and also have great experience interacting with students with special needs, by virtue of their designation as non-public agency aides. The well of experience possessed by non-

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

public agency aides provides them with the insight into teaching and interacting with special needs students, especially to overcome their specific learning disabilities. Non-public agency aides are much less likely than a district or public aide to engage in the type of behavior that causes an unprecedented manifestation of a special needs student's most severe disabilities, as Dawson did on April 6, 2011 with Student.

272. On information and belief, in or about August 2011, Momon, Hinazumi, and or Douglas were aware that Parent intended to bring Student to Victor Valley High to commence ninth grade. These defendants were also aware of their obligation to provide Student with a highly qualified or NPA 1:1 aide.

273. Well knowing their obligations, these defendants denied Student an NPA 1:1 aide when he arrived at school to commence the 2011-2012 school year, by assigning District's own aide to Student and thereby discriminating against and functionally excluding Student from participation in and the benefits of the services offered by Victor Valley High, solely by reason of his disability.

274. On information and belief, these defendants' aforementioned discrimination was intended to make the campus environment unsafe for him and, therefore, exclude him from the services offered by District solely because based on Student's disabilities and appurtenant needs. These defendants and others had already decided back in April 2011 that they wanted to expel Student, but could not do so under the law, so they sought an ulterior means to get Student out of the District, and depriving him of an essential resource was it.

275. District's aforementioned conduct violates Section 794, Title 29 of the United States Code by discriminating against and excluding Student from Victor Valley High's programs, services and activities, solely by reason of his disability.

276. These defendants' discrimination against and exclusion of Student was a substantial factor in causing Student damages. As a direct and proximate result of the aforementioned acts, Student has suffered and continues to suffer

THE OBAGI LAW GROUP
433 NORTH CAMDEN DRIVE, SUITE 400
BEVERLY HILLS, CALIFORNIA 90210

MILLER WASHINGTON & KIM, LLP
725 WASHINGTON STREET, SUITE 300
OAKLAND, CALIFORNIA 94607

medical expenses, personal injuries and damages in a sum according to proof at trial.

277. Pursuant Sections 794 *et seq.*, Student is entitled to monetary damages, and should be awarded attorneys' fees and costs incurred in bringing this action.

c. Third Count: Other Incidents of Discrimination Identified by California Department of Education

**Student v. District; Momon; Hinazumi; Anderson; Mr. Johnson; Douglas; Does 1–100**

278. Plaintiffs hereby refer to and incorporate each and every allegation set forth by the preceding paragraphs.

279. At various times in 2011, Parent complained of depravation of due process through the Office of Administrative Hearings set up by IDEA. In a letter dated June 5, 2012, the California Department of Education (CDE) issued a Notice of Required Corrective Actions to District, by and through Momon, Hinazumi, Anderson, Mr. Johnson and or Douglas, regarding the various violations of state and federal law it had committed with regard to Student.

280. Each below-listed violation of state and federal law for which the CDE required corrective action constitutes a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because District, by and through these defendants, violated various laws to discriminate against or exclude Plaintiffs from the District's services, programs and activities solely on the basis of Student's disability

i. Failure to provide written assessment report with required content;

ii. Failure to use a variety of assessment tools and strategies to gather relevant functional and developmental information about child to assist in determining eligibility for services;